IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

COMPUTER STORES NORTHWEST, INC. and
SCALAR CORP.                                                    No. CV-10-284-HZ

                            Plaintiffs,                         OPINION AND ORDER

        v.

DUNWELL TECH, INC. and
ANMO ELECTRONICS CORP.

                            Defendants.


Shawn J. Kolitch
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

Pierre C. Van Rysselberghe
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204


1 - OPINION AND ORDER

James R. Abney
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

     Attorneys for Plaintiffs

Scott E. Davis
KLARQUIST SPARKMAN LLP
121 SW Salmon St., Suite 1600
Portland, OR 97204

Pamela K. Fulmer, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Brett A. Lovejoy, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Douglas E. Roberts, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

     Attorneys for Defendants Dunwell Tech, Inc. and Anmo Electronics Corp.

Scott E. Davis
KLARQUIST SPARKMAN LLP
121 SW Salmon St., Suite 1600
Portland, OR 97204

Pamela K. Fulmer, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Brett A. Lovejoy, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

2 - OPINION AND ORDER

Noel Rodriguez, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

    Attorneys for Defendant Dunwell Tech, Inc.

3 - OPINION AND ORDER

# TABLE OF CONTENTS

"viewing hole". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

"uncovered viewing hole". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

"optical system". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

"objective lens of said optical system is movable to adjust magnification" and "objective lens that
     is movable to adjust magnification".. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

"light source". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

"light-source lamp" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

"light-source lamp means". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

"encased by the casing" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

"light-source lamp encased by the casing" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

"lamp unit" and "light-source lamp unit" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

"lamp unit can be mounted to and removed from" and "lamp unit can be mounted to". . . . . . . 64

"wherein the common board is supplied with a power supply circuit for supplying power to a

     plurality of lamps". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

"a front end portion of said image pick-up apparatus is bent sideways" . . . . . . . . . . . . . . . . . . 66

"proximate". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

"a wire that transmits information from the imaging device to the monitor". . . . . . . . . . . . . . 76

"a wire that transmits a video signal from the imaging device to the monitor". . . . . . . . . . . . . 76

"imaging device". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

"maintained at a predetermined fixed distance from the object". . . . . . . . . . . . . . . . . . . . . . . 80

"power supply circuit". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

"outer edge of the viewing hole" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

5 - OPINION AND ORDER

HERNANDEZ, District Judge:

Presently before the court is the issue of claim construction of the language of United States Patent No. 5,442,489 (the "'489 patent") and No. 5,442,489 C1 (the "'489 C1 patent"). The patents disclose a handheld portable, hand-held, microscope device. The devices are used across many professional and amateur fields, including law enforcement, medicine, education, and science. They also have the capability to display images on a display such as a computer monitor.

## BACKGROUND

Plaintiffs Computer Stores Northwest, Inc.("Computer Stores") and Scalar Corporation ("Scalar") (collectively, "Plaintiffs") allege Defendants Dunwell Tech, Incorporated ("Dunwell") and Anmo Electronics Corporation ("Anmo") (collectively, "Defendants") are infringing on the '489 and '489 C1 patents. See Second Am. Compl., ¶¶ 18, 22. Computer Stores is an Oregon corporation with its principal place of business and mailing address in Lake Oswego, Oregon. See Id., ¶ 2. Scalar is a Japanese corporation, with its principal place of business and mailing address in Tokyo, Japan. See Id., ¶ 3.

Dunwell is a California corporation doing business as BigC.com and SunriseDino.com, with its principal place of business and mailing address is in Torrance, California. See Dunwell's Answer to Second Am. Compl., ¶ 4. Dunwell sells portable digital microscopes under the trademark Dino-Lite. Id., ¶ 18. These microscopes are made under United States Patent No. 7,102,817 B1 (the "'817 patent"), which was issued on September 5, 2006. See Beeman Decl. in Supp. for Mot. for Summ. J., Ex. 17, p. DT002079. Dunwell obtains its Dino-Lite microscopes from their designer and manufacturer, AnMo, which owns by assignment the '817 patent. See

6 - OPINION AND ORDER

Dunwell Tech, Inc.'s Mem. In Supp. of Mot. For Summ. J., p. 4.  AnMo is a company with its

headquarters and mailing address in Taiwan.  See Pls.' Appl. for Letter Rogatory, p. 1-2.

     Scalar owns the '489 patent,  which is derived from a patent application that was filed

with the U.S. Patent and Trademark Office ("USPTO") on September 23, 1994, and issued on

August 15, 1995.  See Second Am. Compl., ¶ 12.  Scalar granted an exclusive U.S. license to

Computer Stores giving Computer Stores the right to manufacture, sell, and offer for sale certain

products under the '489 patent.  See Id.

     On August 6, 2007, Scalar requested reexamination of all the independent claims of the

'489 patent (claims 1, 6, 7, 11, 16, 23 and 28) in view of nine prior art references that were cited

against the Korean and Japanese counterparts of the '489 patent.  See Dunwell Tech, Inc.'s Mem.

In Supp. of Mot. For Summ. J., p. 6.  Among these references was Japanese Patent Application

59-088135 ("Kimura"), which is directed to an endoscope.  See Id.  Another of the nine prior art

references was the Industrial CCD Camera by Hayashi ("Hayashi"), which is directed to

surveillance cameras.  See Id.

     On February 20, 2009, the USPTO examiner rejected the reexamination claims.  See

Beeman Decl. in Supp. for Mot. for Summ. J., Ex. 9, p. PMX000585.  Claims 1, 7, 23, and 28

were rejected as obvious, claim 11 was rejected as anticipated by Kimura.  See Id. Ex. 9, p.

PMX000587, 593-96.

     Scalar responded to the USPTO's February 20, 2009, rejection in its Amendment and

Response to Office Action dated April 17, 2009, by adding new claims 33-50.  See Id., Ex. 6, p.

PMX000546-47.

On May 7, 2009, the USPTO interviewed Scalar's representatives and suggested that the claim term "viewing hole" be modified to distinguish it over the Kimura and Yamaki prior art, both of which are directed to endoscopes.  See Id., Ex. 10, p. PMX000542; see also Dunwell's Mem. In Supp. of Mot. for Summ. J., p. 13.  On May 26, 2009, Scalar filed a Supplemental Amendment and Response to Office Action in which it amended claims 1, 7, 11, 23, and 28 by changing the term "viewing hole" to "uncovered viewing hole."  See Id., Ex. 11, p. PMX000492 (claim 1);  Id. at PMX000494 (claim 7); Id. at PMX000496 (claim 11); Id. at PMX000499 (claim 23); Id. at PMX000500 (claim 28).  On September 28, 2009, in an Office Action in Ex Parte Reexamination, the USPTO determined amended claims 1, 7, 11, 23 and 28 were patentable. Beeman Decl., Ex. 7, p. PMX000451.  The USPTO, however, rejected claim 16 as anticipated by Kimura.  See Id., Ex. 7, p. PMX000447.

In response to the USPTO's final Office Action on September 28, 2009, Scalar filed a Supplemental Amendment After Final Rejection with the USPTO on December 4, 2009, which amended claim 16 by adding language that the invention comprise a casing "having an uncovered viewing hole."  See Id., Ex. 12, p. PMX000396.

On December 23, 2009, the USPTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate.  See Id., Ex. 13, p. PMX000346.  In a section entitled "Examiner's Statement of Reasons for Patentability/Confirmation," the USPTO stated that claims 1, 7, 11, 16, 19, 23, and 28 were "patentable because the prior art of fails teach [sic] or make obvious the inclusion of a case having an uncovered viewing hole.  The inclusion of this limitation defines patentability over the prior art of record because it defines a distinguished structure of the

magnifying observation apparatus which is not disclosed or make obvious by the prior art of record . . . ."  See Id., Ex. 13, p. PMX000347.

On March 30, 2010, the USPTO issued an Ex Parte Reexamination Certificate confirming the patentability of original claim 6, amended claims 1, 7, 11, 16, 19, 23 and 28, as well as newly presented claims 33-50.  See Second Am. Compl., Ex. C, p. 1-3.

Plaintiffs allege Defendants are making, using, offering for sale, selling, and importing handheld portable magnifiers, as well as teaching the use of their handheld portable magnifiers, including the "Dino-Lite" series of handheld portable magnifiers.  They assert the Dino-Lite product line series are covered by one or more claims of the reexamined '489 patent or '489 C1 patent.  They also contend Defendants' products include, among other covered features, an imaging system and a light source enclosed within a one-handed graspable case and configured to display an image on an associated monitor display.

Plaintiffs also allege that AnMo is manufacturing, or causing to be manufactured, the Dino-Lite products that are being distributed and sold in the United States, including in the State of Oregon.  They further allege that AnMo identifies on its website that its United States distributor for the Dino-Lite products is BigC, and that AnMo is importing, or causing to be imported, the Dino-Lite products into the United States for distribution by BigC in the United States.  Lastly, Plaintiffs allege that BigC is importing or causing to be imported into the United States the Dino-Lite products, which are being sold in among other places, the State of Oregon.

## PROCEDURAL HISTORY

On August 27, 2007, Plaintiffs sued Dunwell in the United States District Court for the District of Oregon, alleging Dino-Lite microscopes infringed its '489 patent.  On August 6, 2007,

before the complaint was served, Scalar requested reexamination of the '489 patent, and on

November 27, 2007, Plaintiffs voluntarily dismissed the case without prejudice.

On March 16, 2010, Plaintiffs filed this case in the United States District Court for the

District of Oregon before the Honorable Garr M. King.  A reexamination certificate of the '489

patent was issued soon after on March 30, 2010.

Plaintiffs filed a first amended complaint on July 20, 2010 (doc. #16), and a second

amended complaint on November 22, 2010 (doc. #26), each alleging infringement of the '489 and

'489 C1 patents.

On July 27, 2010, the parties filed a Joint Motion for Extension of Initial Case Deadlines

(doc. #20), which proposed a discovery and case management schedule, as well as a Scheduling

and Discovery Agreement to govern the exchange of discoverable information and the

procedures for claim construction.  The Scheduling and Discovery Agreement tracks the

Northern District of California's Local Patent Rules.  Judge King adopted the Scheduling and

Discovery Agreement in an order issued July 29, 2010 (doc. #22).

On December 3, 2010, Dunwell filed a Motion for Summary Judgment (doc. #32).  In its

Motion for Summary Judgment, Dunwell asserted that because the claims of Plaintiffs'

reexamined patent were not "substantially identical" to the claims in the original patent, Plaintiffs

were barred from alleging infringement for any acts occurring before issuance of the

reexamination certificate on March 30, 2010, pursuant to 35 U.S.C. § 252 ¶ 1 and 35 U.S.C.§

307(b).  Judge King allowed the parties to fully brief the motion.[1]

---

[1] In addition to their response, Plaintiffs also filed a Surreply to Dunwell Tech, Inc.'s
Motion for Summary Judgment ("Surreply") (doc. #57) on January 17, 2011.  The Surreply was
(continued...)

On December 21, 2010, Anmo filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process (doc. #42).  On February 17, 2011, Plaintiffs filed an Application for Issuance of International Letter of Request (Letter Rogatory) (doc. #69), asking this court to adopt and sign the Letter Rogatory, which would allow them to effect service on Anmo.

On January 17, 2011, Plaintiffs filed their Opening Claim Construction Brief (doc. #55). On January 24, 2011, Judge King denied Dunwell's Motion for Summary Judgment with leave to renew on the basis that it was premature in that Dunwell sought a claim construction before the parties had submitted their construction claim briefs.

On January 31, 2011, Dunwell filed its Responsive Claim Construction Brief (doc. #61), and requested a claim construction hearing.  Plaintiffs filed their Claim Construction Reply (doc. #63) on February 7, 2011.

On February 11, 2011, Dunwell filed its Objections to and Motion to Strike Portions of Plaintiffs' Claim Construction Reply and the Declaration of Gregory A. Shaver ("Motion to Strike") (doc. #66).[2]  On that same day, Plaintiffs filed their response to Dunwell's Motion to Strike (doc. #68).

On February 23, 2011, this case was reassigned to me.  I adopted and signed Plaintiffs' proposed Letter Rogatory on March 16, 2011 (doc. #72).

On March 21, 2011, Plaintiffs filed their response to Anmo's Motion to Dismiss for Lack

---

[1](...continued)
filed after Dunwell had filed its reply on January 7, 2011.

[2] The Declaration of Gregory A. Shaver ("Shaver Declaration") was filed with Plaintiffs' Claim Construction Reply.

of Personal Jurisdiction and Insufficient Service of Process (doc. #75), and on April 4, 2011,

Anmo filed its reply to its Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient

Service of Process (doc. #77).

Before me is the issue of claim construction (doc. #55) and Dunwell's motion to strike

(doc. #66).

## STANDARDS

### I. Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), a "court may strike from a pleading . . . any redundant,

immaterial, impertinent, or scandalous matter ."  Fed. R. Civ. P. 7(a) identifies "pleadings" as the

complaint, answer, and reply, but not motions and other papers.  A motion to strike under Fed. R.

Civ. P. 12(f) is limited to pleadings.  United States v. Crisp, 190 F.R.D. 546, 550-51 (E.D. Cal.

1999) (citing Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983)).  However,

a district court has the inherent power to strike a party's submissions other than pleadings.  See

Metzger v. Hussman, 682 F. Supp. 1109, 1110 (D. Nev. 1988), see also Calkins v. Shapiro &

Anderson, L.L.P., No. 05-0815-PHX-ROS, 2005 WL 3434718, at *3 (D .Ariz. 2005); Chambers

v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (recognizing the district court's inherent power and

discretion to sanction litigants or attorneys).  The alternative basis for striking improper filings is

the district court's "inherent power over the administration of its business.  It has inherent

authority to regulate the conduct of attorneys who appear before it [and] to promulgate and

enforce rules for the management of litigation. . . ."  Spurlock v. F.B.I., 69 F.3d 1010, 1016 (9th

Cir. 1995) (citations omitted).

Motions to strike are regarded with disfavor.  Montecino v. Spherion Corp., 427 F. Supp.

2d 965, 966-67 (C.D. Cal. 2006) (citation omitted).  Matters should not be stricken unless it is

clear that those matters have no possible bearing upon the subject matter of the litigation.  See Id.

at 967 (citation omitted).

In determining whether to grant a motion to strike, a district court views the pleadings in

a light most favorable to the non-moving party, and "resolves any doubt as to the . . . sufficiency

of a defense in defendant's favor."  State of Cal. Dep't of Toxic Substances Control v. Alco Pac.,

Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted).  Whether to strike

challenged materials is within the sound discretion of the district court.  See Fantasy, Inc. v.

Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993).

## II. Claim Construction Standards

### A. General Rules

"[T]he construction of a patent, including terms of art within its claim, is exclusively

within the province of the court."  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372

(1996).  While the court adopts the parties' agreed construction of claims where possible, claims

are construed independently and not simply as a choice between the parties' constructions.

Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1555 (Fed. Cir. 1995).  Because

claim construction "is not an obligatory exercise in redundancy," the court need not restate every

claim.  U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

"[C]laims should be so construed, if possible, as to sustain their validity."  ACS Hosp.

Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) (citations omitted).  The

13 - OPINION AND ORDER

claim language specifies "'the subject matter which the applicant regards as his invention.'"
<u>Markman</u>, 517 U.S. at 373, (citing and quoting 35 U.S.C. § 112).

To construe a patent claim, courts look to the language of the claims in the patent itself, the description in the patent's specification, and the prosecution history of the patent, all of which constitute a record "on which the public is entitled to rely." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996); <u>see also</u> <u>Dow Chem. Co. v. Sumitomo Chem. Co.</u>, 257 F.3d 1364, 1372 (Fed. Cir. 2001).  Claim language is given its "ordinary and accustomed meaning as understood by one of ordinary skill in the art." <u>Dow Chem. Co.</u>, 257 F.3d at 1372 (citation omitted).  Courts cannot rewrite claims, but must "give effect to the terms chosen by the patentee." <u>K-2 Corp. v. Solomon S.A.</u>, 191 F.3d 1356, 1364 (Fed. Cir. 1999) (citation omitted).

In most cases, the court should be able to resolve ambiguous claim terms by analyzing only the intrinsic evidence.

**B. Claim Language**

"The actual words of the claim are the controlling focus." <u>Digital Biometrics, Inc. v. Identix, Inc.</u>, 149 F.3d 1335, 1344 (Fed. Cir. 1998) (citing <u>Thermalloy, Inc. v. Aavid Eng'g, Inc.</u>, 121 F.3d 691, 693 (Fed. Cir. 1997)).  The starting point for claim construction is a disputed term's ordinary meaning.  <u>Phillips</u>, 415 F.3d at 1313.  Ordinary meaning, in the patent claim construction context, is the meaning that a person of ordinary skill in the art would attribute to a claim term in the context of the entire patent at the time of the invention, i.e., as of the effective filing date of the patent application.  <u>ICU Med., Inc. v. Alaris Med. Sys., Inc.</u>, 558 F.3d 1368, 1374 (Fed. Cir. 2009).

There is a "heavy presumption" that a claim term carries its "ordinary and customary meaning," and any party seeking to convince a court that a term has some other meaning "must, at the very least, point to a term or terms in the claim with which to draw in [statements in the written description that affect the patent's scope]." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999) (internal quotations and citations omitted). This may be accomplished if: (1) "a different meaning is clearly and deliberately set forth in the intrinsic materials" of the patent; or (2) use of "the ordinary and accustomed meaning . . . would deprive the claim of clarity . . . ." K-2 Corp., 191 F.3d at 1363. In making this assessment, the court should use common sense and "the understanding of those of ordinary skill in the art" of the patent at issue, unless the patent history supplies another meaning. Id. at 1365; Digital Biometrics, 149 F.3d at 1344.

"An accused infringer may overcome this 'heavy presumption' and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." E.g., CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citation omitted). As clarified by the Federal Circuit:

> [A] court may constrict the ordinary meaning of a claim term in at least one of four ways. First, the claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history. . . . Second, a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention. . . . Third, . . . a claim term also will not have its ordinary meaning if the term "chosen by the patentee so deprive[s] the claim of clarity" as to require resort to the other intrinsic evidence for a definite meaning. . . . Last, as a matter of statutory authority, a claim term will cover nothing more than the

corresponding structure or step disclosed in the specification, as well as equivalents thereto, if the patentee phrased the claim in step- or means-plus-function format.

Id. at 1366-67 (internal citations omitted).

### C. The Patent's Specification

"[C]laims are always construed in light of the specification, of which they are a part." Netword LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001). "That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (internal quotations and citation omitted). It is improper to import, or "read in" to a claim, a limitation from the specification's general discussion, embodiments, and examples. See, e.g. Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d 1376, 1384 (Fed. Cir. 1998); Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 836 (Fed. Cir. 1991) (holding that "[w]here a specification does not require a limitation, that limitation should not be read from the specification into the claims ."); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1571 (Fed. Cir. 1988) (citations omitted) (finding that "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims.").

Still, "[c]laims are not interpreted in a vacuum." Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1116 (Fed. Cir. 1987). "[T]he specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." Vitronics, 90 F.3d at 1582. Thus, it is improper to eliminate, ignore, or "read out" a claim limitation in order to extend a patent to subject matter disclosed, but not claimed.

See, e.g., Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1582-83 (Fed. Cir. 1996).

Claims may not "enlarge what is patented beyond what the inventor has described as the invention." Netword, LLC, 242 F.3d at 1352. For example, when the patent specification describes the invention as including a feature, the claims should be construed to require that feature. See, e.g., Watts v. XL Sys., Inc., 232 F.3d 877, 883 (Fed. Cir. 2000). Similarly, when the specification criticizes or disclaims certain features in the prior art, the claims should not be read to encompass the criticized features. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) (finding that the criticism of one type of "lumen" in patent excluded that type from construction of the claim term).

Finally, claims should not be limited to the preferred embodiment. CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1158 (Fed.Cir.1997); see also Amhil Enter., Ltd. v. Wawa, Inc., 81 F.3d 1554, 1559 (Fed. Cir. 1996) (holding that "[a] preferred embodiment . . .is just that, and the scope of a patentee's claims is not necessarily or automatically limited to the preferred embodiment").

"[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." Phillips, 415 F.3d at 1323. "[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification. . . . [A]ttempting to resolve that problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language from the

17 - OPINION AND ORDER

specification." <u>Decisioning.com, Inc. v. Federated Dept. Stores, Inc.</u>, 527 F.3d 1300, 1307-08 (Fed. Cir. 2008) (citation and quotation omitted).  There is therefore "no magic formula or catechism for conducting claim construction," and the court must "read the specification in light of its purposes in order to determine whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." <u>Id.</u> (internal citations omitted). In walking this "tightrope," <u>Andersen Corp. v. Fiber Composites, LLC</u>, 474 F.3d 1361, 1373 (Fed. Cir. 2007), the court hews to the question of "how a person of ordinary skill in the art would understand the claim terms." <u>Phillips</u>, 415 F.3d at 1323.

### D. Prosecution History

Prosecution history of a patent with the USPTO "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." <u>Jonsson v. Stanley Works</u>, 903 F.2d 812, 817 (Fed. Cir. 1990) (internal quotations and citations omitted).  The prosecution "history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.  As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims." <u>Vitronics</u>, 90 F.3d at 1582-83.  Any statements or actions made in the prosecution history by the patentee characterizing what the claimed invention includes or excludes provide notice to the public as to the scope of the claims and therefore are binding on the construction of the claims.  See, e.g., <u>Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.</u>,

222 F.3d 951, 957 (Fed. Cir. 2000) (allowing patentee to erase actions in the prosecution history would be "inimical to the public notice function provided by the prosecution history.").

**E. Extrinsic Evidence**

Consideration of intrinsic evidence will resolve any claim term ambiguity in most circumstances.  See Phillips, 415 F.3d at 1313-14.  Where it does not, however, the court may consider certain "extrinsic evidence."  See Id. at 1317.  Expert testimony, for example, may provide helpful background on the technology at issue, explain how an invention works, or establish that a claim term has a particular meaning in the relevant field.  See Id. at 1319. Dictionaries and treatises may also be helpful in this regard.  Id. at 1318.  However, precedent counsels against reliance on dictionary definitions at the expense of the specification because such reliance "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent."  Id. at 1321; see also Nystrom v. Trex Co., 424 F.3d 1136, 1145 (Fed. Cir. 2005).

In the end, the court's ultimate goal is to construe the disputed terms in a manner consistent with the way the inventor defined them and a person of ordinary skill in the art would understand them.  j2 Global Commc'ns Inc. v. Captaris Inc., No. CV 09-04150 DDP (AJWx), 2011 WL 837923, at *2 (C.D. Cal. 2011).  "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  Phillips, 415 F.3d at 1316 (internal quotation marks omitted).

**DISCUSSION**

**I. Motion to Strike**

As a threshold issue, I turn first to Dunwell's Motion to Strike (doc. #66). Dunwell moves to strike the entire portion in Plaintiffs' claim construction reply construing the term "viewing hole." Dunwell argues that Plaintiffs introduce new arguments regarding the term "viewing hole," thereby depriving it of any opportunity to respond. Dunwell's argument is unavailing.

Here, with respect to the term "viewing hole," Plaintiffs refer me to the arguments presented in their response and surreply memoranda in opposition to Dunwell's motion for summary judgment. See Pls.' Opening Claim Construction Br., p. 12. In its Responsive Claim Construction Brief, Dunwell directs me to its arguments in its motion for summary judgment and corresponding reply memoranda. See Responsive Claim Construction Br., p. 8. A review of Plaintiffs' Claim Construction Reply shows that Plaintiffs simply replied to the arguments presented in Dunwell's Responsive Claim Construction Brief, in other words, Dunwell's motion for summary judgment and corresponding reply memoranda. See Pls.' Claim Construction Reply, p. 10-16. Accordingly, the portion of Plaintiffs' Claim Construction Reply which Dunwell moves to strike is proper and in line with the Scheduling and Discovery Agreement. Dunwell's motion to strike this portion of Plaintiffs' Claim Construction Reply is denied.

Dunwell also moves to strike the Shaver Declaration in its entirety. The information contained in the declaration does not affect my construction of the disputed claim terms. Accordingly, I conclude that the evidence contained in the declaration is not outcome-

determinative and Dunwell's argument in regards to striking the Shaver Declaration is denied as

moot.  I turn next to the construction of the claim terms.

## II. Claim Construction

The '489 patent contains thirty-two claims.  See '489 patent, claims 1-32.  The '489 C1

patent, contains fifty claims.  See '489 C1 patent.  The parties disagree as to the construction of

twenty-one claim terms.[3]

### A. "viewing hole"

Plaintiffs define the term "viewing hole" as "an uncovered opening."  Dunwell defines the

term as "a covered or uncovered viewing hole."  The term "viewing hole" appears in claims 1, 7,

11, 19, 23, and 28 of the '489 patent.

#### 1. Intrinsic Evidence

The parties direct me to their arguments in their briefs associated with Dunwell's motion

for summary judgment, without directing me to any specific pages or arguments in those briefs.

Their arguments are addressed below.

##### a. The Claim Language

Plaintiffs argue that the plain and ordinary meaning of the term "hole" is an uncovered

opening.  The claim term to be construed, however, is not the word "hole."  Instead, the term to

be construed is "viewing hole."  The presence of the modifier "viewing" before the word "hole"

_____

[3] Dunwell now proposes new definitions for the following seven claim terms: (1) "optical system"; (2) "a light-source lamp encased by the casing"; (3) "a lamp unit"; (4) "light-source lamp means"; (5) "light-source lamp unit" (6) "light-source lamp"; and (7) "light-source."  At oral argument on April 7, 2011, I ruled that Dunwell's proposal of new definitions violates the Scheduling and Discovery Agreement, which Judge King adopted on July 29, 2010.  Accordingly, I ruled that I would not consider Dunwell's newly proposed definitions.

indicates that the claims refer to a certain subset of "holes," and not to the broad category of holes in general.  Accordingly, I decline to construe the term "hole" without consideration of the modifier "viewing" before it, and I decline to define the term "hole" by placing other modifiers before it or in different contexts, such as portholes and motorcycle helmets as the parties would have me do here.

Plaintiffs assert that a "viewing hole" cannot reasonably be described as being "formed" in a casing as recited in claims 1, 7, and 19 if it is a covered opening.  See '489 patent, claims 1, 7 (referring to the casing as "having a viewing hole formed therein"); Id., claim 19 (reciting "a viewing hole formed in the casing").  I disagree with Plaintiffs' assertions because a person of ordinary skill in the art could conclude that in the context of the '489 patent an uncovered "viewing hole" could be "formed" in a casing just as equally as a covered "viewing hole." Plaintiffs provide no evidence to support their argument, and I find no language in the claims supporting Plaintiffs' proposed definition.

### b. The Language of the Specification

Plaintiffs assert that the language in the specification refers to the word "hole" as an uncovered opening, and therefore, a person of ordinary skill reading the '489 patent would interpret the word "hole" to have the same meaning.  They argue that the specification's reference to and figures illustrating "mounting holes," "terminal receiving holes," and "through the hole 331" show that the word "hole" means an uncovered opening.  See '489 patent, column 7, lines 6-10, 38-39, 50-51; Id., column 8, lines 50-51; Id., Figures 2, 3, 9.

Although the language of the third embodiment and its corresponding diagram, Figure 9, may support Plaintiff's proposed definition of the term "viewing hole," "patent coverage is not

necessarily limited to inventions that look like the ones in the figures." MBO Labs., Inc. v.

Becton, Dickinson & Co., 474 F.3d 1323, 1333-34 (Fed. Cir. 2007) (citation omitted).  More

important, I find that for the modifier "viewing" to have any meaning here, it must add some

limitation to the word "hole."  Surely, the inclusion of the modifier "viewing" was meant to limit

the claim term "viewing hole" to something more narrow than the broad category of "holes" in

general.  Plaintiffs' reliance on other terms in the specification, including "mounting holes" and

"terminal receiving holes," would essentially read the modifier "viewing" as irrelevant and

unnecessary to the meaning of the claim term and would improperly read this limitation out of

the claim term.  See, e.g., Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n, 988 F.2d 1165, 1171

(Fed. Cir. 1993) (refusing to "read an express limitation out of the claims").

I conclude that the modifier "viewing" informs the nature of the word "hole" in the

relevant claim terms here and limits the claim term to types of holes more narrow than the broad

category of "holes."  Accordingly, I do not find that the language in the specification here defines

this claim term.  See ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003)

(stating that "the context of the surrounding words of the claim also must be considered in

determining the ordinary and customary meaning of those terms").

### c. The Drawings in the Specification

Plaintiffs assert that Figures 1, 2, 6, and 9 of the '489 patent indicate a person of ordinary

skill would believe the term "viewing hole" would mean an uncovered opening.[4]  Dunwell argues

---

[4] Figure 1 depicts the first embodiment.  '489 patent, column 5, lines 7-9.  Figure 2
depicts a partial perspective view of the first embodiment, and Figure 6 depicts a partial
perspective view of the second embodiment.  Id., lines 10-12, 20-21.  Figure 9 diagrams a
conventional magnifying system.  Id., lines 38-39 (emphasis added).

that Figure 1 of the '489 patent uses cross-hatching across the viewing hole to indicate that the cross-section was taken through solid material. It further asserts that it cannot be determined by looking at Figures 2 and 6 whether the "viewing holes" in the '489 patent are covered or uncovered because the diagrams would look the same if they were covered with a transparent material such as clear plastic or glass.

I agree with Plaintiffs that Figure 1 does not illustrate a solid covering represented by a cross-hatching across the viewing hole. The light path which the light from the light source lamp unit inside the apparatus is also represented by the same dash-dot-dot-dash line, which supports Plaintiffs' contention that the line across the viewing hole line is not depicted by a cross-hatching line representing solid material.

However, contrary to Plaintiffs' assertion, Figures 2 and 6 do not support the proposition that a person of ordinary skill would interpret the term "viewing hole" as an uncovered opening. According to Figures 2 and 6, the space inside the viewing holes could be solid material, such as glass or plastic, or could be empty. I find nothing in the figures of the '489 patent showing a clear intent by the inventors to limit the term "viewing hole" to uncovered openings. The drawings here simply do not support limiting the term "viewing hole" to only uncovered viewing holes. See Pulse Eng'g, Inc. v. Mascon, Inc., No. 08cv0595 JM (AJB), 2009 WL 755321, at *2 (S.D. Cal. 2009) ("limitations from the specification (including the drawings or Figures) should not be read into the claims.").

### d. The Prosecution History

Plaintiffs assert that the '489 patent's prosecution history does not clarify the meaning of the term "viewing hole." I disagree.

"The court must always consult the prosecution history, when offered in evidence, to determine if the inventor surrendered disputed claim coverage." SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1286 (Fed. Cir. 2005) (citation omitted). Courts should consider the patent's prosecution history, which "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317 (citations omitted). "The prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Examiner's objections." Lemelson v. General Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992). Reexamination statements "are relevant prosecution history when interpreting claims." E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1439 (Fed. Cir. 1988); see also Nystrom, 424 F.3d at 1147 (considering examiner's statements when construing certain claim terms). The reexamination procedure serves an important role in providing a district court with an "expert view of the [USPTO]." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983). "Because an examiner in reexamination can be considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight." St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc., Nos. 2009-1052, 2010-1137, 2010-1140, 2011 WL 66166, at *6 (Fed. Cir. 2011) (unpublished).[5]

_____

[5] In the Ninth Circuit, unpublished dispositions issued after January 1, 2007, may be cited even though they are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Ninth Cir. Rule 36-3; see also Fed. R. App. P. 32.1 (precluding courts from prohibiting or restricting the citation of federal judicial opinions that have been designated unpublished after January 1, 2007).

25 - OPINION AND ORDER

Here, the term "viewing hole" was a disputed issue which prevented Scalar from obtaining patentability.  See Beeman Decl. in Supp. of Mot. for Summ. J., Ex. 6, p. PMX000931-39.  The record shows that Scalar requested reexamination of "claims 1, 6, 7, 11, 16, 23, and 28 of the '489 patent in view of the prior art references."[6] See Id., p. PMX000932. The USPTO, however, initially rejected claims 1, 7, 11, 23, and 28 because they read on Kimura, which also disclosed a "viewing hole."  See Id., Ex. 9, p. PMX000591, 593, 595, 597-98, 599. After an interview with the '489 patent owners' representatives on May 7, 2009, the USPTO stated that "the claimed 'viewing hole' term [was] discussed and compared with the 'viewing hole' of an endoscope.  The patent owner's representatives point[ed] out the difference between them. The examiners suggest[ed] the language of the claim to be modified to highlight the difference." See Id., Ex. 10, p. PMX000542.  Plaintiffs also submitted a Supplemental Amendment and Response to Office Action ("Supplemental Amendment and Response") after the May 7, 2009, interview.  See Id., Ex. 11, p. PMX000490.  In the Supplemental Amendment and Response, Plaintiffs made the following statements:

> Regarding the possible ambiguity, during the interview, the examiners suggested that the term "viewing hole" could be interpreted to encompass holes that are covered.  Although the patent owner disagrees with such an interpretation based on the reasons discussed below, for clarification, claims 1, 7, 11, 23, and 28 have been amended to add the term "uncovered" to remove any possibility of ambiguity.

Id. at PMX 000508 (emphasis added).

On December 4, 2009, Scalar submitted a Supplemental Amendment After Final Rejection, which amended claims 1, 7, 11, 23, and 28 of the '489 patent by changing the term

_____

[6] Claims 6 and 16 do not recite the term "viewing hole."

"viewing hole" to "uncovered viewing hole."  <u>See</u> Second Am. Compl., Ex. D, p. 1-8.  It also

added new claims 33-50, some of which also referred to the term "uncovered viewing hole"

instead of just "viewing hole."  <u>See</u> Id., p. 9-12.  It also provided that the "listing of claims . . .

replace[d] all prior versions, and listings, of claims in the application."   <u>See</u> Id., p. 2.

On December 23, 2009, the USPTO issued a Notice of Intent to Issue Ex Parte

Reexamination Certificate.  <u>See</u> Beeman Decl. in Supp. of Mot. for Summ. J., Ex. 13, p.

PMX000346.  In a section entitled "Examiner's Statement of Reasons for

Patentability/Confirmation," the USPTO stated that claims 1, 7, 11, 16, 19, 23, and 28 were

patentable as "[t]he inclusion of [the uncovered viewing hole] limitation define[d] patentability

over the prior art of record because it define[d] a distinguished structure of the magnifying

observation apparatus which is not disclosed or make [sic] obvious by the prior art of record . . .

."  <u>See</u> Id., Ex. 13, p. PMX000347.

The USPTO offered Scalar the opportunity to submit a response to the USPTO's

statements in its December 23, 2009 Notice of Intent to Issue Ex Parte Reexamination

Certificate.  <u>See</u> Id., p. PMX000348.  Scalar did not object to or comment on the USPTO's

statement of reasons for patentability before the Reexamination Certificate was issued on

March 30, 2010.  <u>See</u> Id., Ex. 13, p. PMX000346, 348.

Plaintiffs assert that not responding to the USPTO's statements does not amount to

acquiescence by Scalar to the examiner's definition of the term "viewing hole."  I agree because

"there is no obligation to respond to an examiner's statement of Reasons for Allowance, and the

statement of an examiner will not necessarily limit a claim . . . ."  <u>ACCO Brands, Inc. v. Micro</u>

<u>Sec. Devices, Inc.</u>, 346 F.3d 1075, 1078 (Fed. Cir. 2003) (citation omitted).

27 - OPINION AND ORDER

Plaintiffs argue that Scalar has consistently taken the position that a "viewing hole" is uncovered, and has never made an affirmative statement to the contrary either in the reexamination proceedings or this litigation.  They point to the following excerpts of the patentee during the '489 patent reexamination process to support their proposition:

> Kimura would still fail to teach or suggest the features of (1) an object located proximate to the image pick-up apparatus and (2) the viewing hole, as those features should be interpreted in the context of claims 11 and 16, the '489 patent disclosure, and the knowledge of one of ordinary skill in the art.

See Kolitch Decl. in Supp. of Opp'n to Dunwell's Mot. for Summ. J., Ex. A, p. PMX000511.

> Regarding the term 'viewing hole,' as set forth above, to address a possible ambiguity raised by examiners, the patent owner has amended claim 11 (and claims 1, 7, 23, and 28) to add the term 'uncovered.'  Nevertheless, the patent owner disagrees with the examiners on this point and respectfully submits that the term 'viewing hole' already encompasses the meaning of uncovered for the reasons set forth below.  Accordingly, these amendments are made merely to remove any possible ambiguity and do not substantively change the claims."

Id. at PMX000512 (emphasis added).

> [O]ne of ordinary skill in the art would understand that the recited "viewing hole" could not be covered because such a cover would contact the object to be observed, alter the surface of the object, and result in distorted images that are not representative of the actual surface of the object.  For example, if the viewing hole were covered with transparent plastic, and the image pick-up apparatus were abutted against a patient's skin, the transparent plastic would press against the skin and distort the surface features of the skin, e.g., unnaturally smoothing the skin.

Id. at PMX000513 (emphasis added).

> Based on my knowledge of and experience in the field of handheld digital video microscopes, and in light of the '489 patent disclosure, it is [one of the inventors Masao Yamamoto's] opinion that the term 'viewing hole' means an uncovered opening . . . .

Id., Ex. B, p. PMX000536 (emphasis added).

28 - OPINION AND ORDER

Despite the remarks made by the inventors during the reexamination of the '489 patent, I am not persuaded that Plaintiffs' amendment of the term "viewing hole" to "uncovered viewing hole" was not intended to limit the claims when taking into consideration the totality of the prosecution history.  See Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999) (stating that "it is the totality of the prosecution history that must be assessed").

It is a truism that "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  Phillips, 415 F.3d at 1317.  "[T]he prosecution history . . . of the patent consists of the entire record of proceedings in the Patent and Trademark Office."  Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985) (emphasis added).  "This includes all express representations made by or on behalf of the applicant to the examiner to induce a patent grant. . . . Such representations include amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness."  See, e.g., Id. (emphasis added).  "The reexamination procedure serves an important role in providing a district court with an 'expert view of the [US]PTO.'"  Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).

When read as a whole, the prosecution history here sheds decisive light on the scope of the disputed claim term.  In this case, the reexamination of the '489 patent occurred against the backdrop of Scalar's own request for reexamination in its attempt to distinguish the '489 patent from, among other prior art, Kimura and Yamaki.  As originally filed, the claims at issue included only the term "viewing hole."  '489 patent, claims 1-32.  The examiner rejected the

claim terms on the grounds that the term "viewing hole" included covered viewing holes.  See

Beeman Decl. in Supp. of Mot. for Summ. J., Ex. 11, p. PMX000508.  Despite Plaintiffs'

disagreement with the examiner's definition of the term "viewing hole," they amended the claim

language by replacing the term "viewing hole" with "uncovered viewing hole."  See Id., p.

PMX000492, 494, 496, 499-500; see also Second Am. Compl., Ex. D, p. 1-8.  In fact, in a

section entitled "Remarks" in the December 4, 2009, Supplemental Amendment After Final

Rejection submission to the USPTO, Scalar admitted that it "respectfully submitted that all of the

Examiner's rejections ha[d] been successfully traversed and that all of the claims subject to

reexamination [were] in condition for allowance."  See Second Am. Compl., Ex. D, p. 14.  The

amendments allowed Scalar to distinguish its invention over prior art and obtain patentability.

See Beeman Decl. in Supp. of Mot. for Summ. J., Ex. 13, p. PMX000347.  The clear inference

from Scalar's conduct in response to the rejection of its claims during reexamination by

amending the relevant claim terms was clearly done to overcome the USPTO examiner's

rejection, not simply to clarify any ambiguity.  See Computer Docking Station Corp. v. Dell, Inc.,

519 F.3d 1366, 1374 (Fed. Cir. 2008) (citation omitted) (stating that "a patentee may limit the

meaning of a claim term by making a clear and unmistakable disavowal of scope during

prosecution. . . . by  clearly characterizing the invention in a way to try to overcome rejections

based on prior art") (citation omitted); see also Cognitronics Imaging Sys., Inc., No. 00-CV-

0377-K (JFS), 2001 WL 36181219, at *3 (stating that a party may not "construe a claim one way

during the patent prosecution in order to obtain the patent and then construe that same claim in a

different way against an accused infringer") (citing Southwall Tech., Inc. v. Cardinal IG Co., 54

F.3d 1570, 1576 (Fed. Cir. 1995)).


30 - OPINION AND ORDER

Lastly, reading the phrase "uncovered" into the term "viewing hole" goes against how a person of ordinary skill in the art would understand the term after reading the claims, specification, and prosecution history.  The USPTO examiner here explicitly rejected the claims on the grounds that the term "viewing hole" encompassed covered viewing holes, and the inventors of the '489 patent responded by amending the claim term to "uncovered viewing holes." Indeed, the '489 C1 patent would not even exist today if I were to construe the term as Plaintiffs propose here because the USPTO examiner would not have issued the Ex Parte Reexamination Certificate.

When taken in its entirety, I find that the exchange between the USPTO and the patentees and the amendments the inventors made to the claims of the '489 patent indicate that the inventors intended to narrow the term "viewing hole" to "uncovered viewing hole" in order to distinguish their claims from prior art and to obtain patentability of their claims.  When a patentee forgoes the option to appeal and instead submits an amended claim, it is "taken as a submission that the invention as patented does not reach as far as the original claim." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 734 (2002); see also Elkay Mfg. Co., 192 F.3d at 979 (holding "it is irrelevant whether [the patentee] relinquished [the] potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference.") (Emphasis added).

Plaintiffs argue that the examiner's opinion here is irrelevant because of the completely different legal standards applied by the USPTO and the courts when construing claim terms. They argue that unlike this court, which must construe claim terms more narrowly, the USPTO must give claim terms the broadest reasonable interpretation.  In support of their proposition,

Plaintiffs rely on In re American Academy of Science Technology Center, 367 F.3d 1359, 1369 (Fed. Cir. 2004).

I am not persuaded by Plaintiffs' assertion.  In American Academy, the Federal Circuit held "it is error for the [USPTO] to 'appl[y] the mode of claim interpretation that is used by courts in litigation, when interpreting the claims of issued patents in connection with determinations of infringement and validity.'"  Id. at 1369 (citation omitted).  Accordingly, the Federal Circuit did not conclude that a USPTO's statements during reexamination are irrelevant because they apply a different standard when construing claim terms.

Furthermore, the Federal Circuit has expressly stated that "[a]lthough unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant, it does not necessarily follow that such statements are not pertinent to construing claim terms.  Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed." Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1347 (Fed. Cir. 2005); see also St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc., Nos. 2009–1052, 2010–1137, 2010–1140, , 2011 WL 66166, at *5 (Fed. Cir. 2011) (holding defendants' construction of the claim term was "supported by remarks made by the examiner during reexamination. . . . Reexamination statements 'are relevant prosecution history when interpreting claims.'").  The USPTO examiner's statements here are pertinent to the construction of the term "viewing hole."

I turn next to whether the definition of "viewing hole" should be limited to "viewing" as Dunwell proposes here.  I find that neither the claims nor specification limit the term "viewing hole" to a "viewing" limitation.  Amended claims 1, 11, and 16 indicate that the "uncovered

viewing hole" allows light from the light-source lamp to pass through and radiate the object to be observed.  See '489 C1 patent, claims 1, 11, 16.  Similarly, the specification also teaches that light from the light source travels "through hole 331" and radiates onto the observed object.  See '489 patent, column 10, lines 20-28.  Moreover, I find Dunwell's inclusion of the word "viewing" in the definition circular because it includes a term that the court is attempting to construe.  See Sparton Corp. v. U.S., 68 Fed. Cl. 34, 47 (2005) ("To the extent that [Plaintiffs'] proposed meaning is a circular definition (i.e., one that uses the word that it attempts to define in the definition itself), it is clearly improper.").

For the reasons set forth above, I conclude that the prosecution history provides an independent ground for construing the term "viewing hole" as meaning "a covered or uncovered opening."  Accordingly, I find it unnecessary to rely on extrinsic evidence to construe this term. See Bell Atl. Network Servs., Inc. v. Covad Commc'n Grp., Inc., 262 F.3d 1258, 1268-69 (Fed. Cir. 2001).

**B. "uncovered viewing hole"**

Plaintiffs define this term as "an uncovered opening."  Dunwell defines the term as "uncovered viewing hole."

A court may consider the "specification and the claims . . . when determining the meaning of a claim term."  AstraZeneca LP v. Apotex, Inc., Nos. 2009-1381, 2009-1424, 2010 WL 4286284, at *9 (Fed. Cir. 2010).  "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'"  Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d

1323, 1331 (Fed. Cir. 2001).  The terms used in the claims bear a presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art.  See CCS Fitness, Inc., 288 F.3d at 1366 (Fed. Cir. 2002).

I adopt Plaintiffs' proposed construction.  First, it is consistent with the claims themselves.  As discussed above, neither the claims nor specification limit the claim term to only "viewing."  Here, amended claims 1, 11, and 16 indicate that the "uncovered viewing hole" also allows the light-source lamp to light the observed object.  '489 C1 patent, claims 1, 11, 16.  Similarly, the specification teaches that light from the light source travels through the "uncovered viewing hole" to radiate light onto the observed object.  '489 patent, column 10, lines 20-28.  Second, I find that Dunwell's proposed definition is improper because it is identical to the claim term that I have been asked to construe.  See Sparton Corp., 68 Fed. Cl. at 47 ("To the extent that [Plaintiffs'] proposed meaning is a circular definition (i.e., one that uses the word that it attempts to define in the definition itself), it is clearly improper.").  Accordingly, I construe the term "uncovered viewing hole" as "uncovered opening."

**C. "optical system"**

Plaintiffs construe the term "optical system" as "a system including a lens capable of forming a focused image."  Dunwell initially defined the term as "a system including an objective lens and an imaging device, the system being magnification-variable while retaining a fixed focal plane because the value of m=b/a (where 'm' is magnification, 'a' is the distance between the object to be observed and the objective lens, and 'b' is the distance between the objective lens and the imaging device) changes as the objective lens and imaging device each slide while satisfying the relation $1/a + 1/b = 1/f$ (where 'f' is the focal length of the lens)."

34 - OPINION AND ORDER

The term "optical system" appears in all seven independent claims, specifically, claims 1, 6, 7, 11, 16, 23, and 28.  These claims recite that the '489 patent incorporates an "optical system for focusing the image" of an object.  '489 patent, claims 1, 6, 7, 11, 16, 23, and 28.  In addition, claim 6 also recites the following:

> [T]the optical system including an objective lens and wherein the objective lens of said optical system and said imaging device slide in interlock with each other while satisfying the relation of $1/a + 1/b = 1/f$, where $a$ is the distance between the object to be observed and the objective lens, $b$ is the distance between the objective lens and the imaging device, and $f$ is the focal length of the objective lens.

Id., claim 6 (emphasis added).

Dependant claims 4, 9, 14, 19-21, 26 and 31 also recite the term "optical system."[7] Claims 4, 9, 14, 20, 26 and 31 recite that the objective lens of the "optical system" and the imaging device "slide in interlock with each other."  Id., claims 4, 9, 14, 20, 26, 31.  Dependent claims 4 and 9 require the objective lens of the optical system and imaging device satisfy the relation "$1/a+1/b=1/f$."  Id., claims 4, 9.  Claim 19 requires that the optical system "focuses the image of an object," and claim 21 limits the objective lens to be "movable to adjust magnification."  Id., claims 19, 21.

I find that Dunwell's proposed definition would render other claim language superfluous. The doctrine of claim differentiation creates a presumption against constructions that would render a claim meaningless in its entirety by making it identical in scope to another claim. Sinorgchem Co., Shandong v. Int'l Trade Comm'n, 511 F.3d 1132, 1139 (Fed. Cir. 2007).  In other words, claim differentiation creates a presumption that each claim in a patent has a

---

[7] Dependent claims 33, 42, 43, 44, 45, 47, and 50 of the '489 C1 patent also refer to the term "optical system."

different scope.  Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1368 (Fed. Cir. 2000).

"[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption

that the limitation in question is not present in the independent claim."  Phillips, 415 F.3d at

1315; see also Anderson Corp., 474 F.3d at 1369-70 (stating that "[t]o the extent that the absence

of such difference in meaning and scope would make a claim superfluous, the doctrine of claim

differentiation states the presumption that the difference between claims is significant.").

"Claims of narrower scope can be useful to clarify the meaning of broader, independent claims

under the doctrine of claim differentiation."  In re Tanaka, No. 2010–1262, 2011 WL 1437887, at

*4 (Fed. Cir. 2011) (citing Phillips, 415 F.3d at 1314).

　　　Here, claims 4 and 9 depend on independent claims 1 and 7, respectively.  Claims 4 and 9

add nearly identical limiting language and recite the following:

> 4. A magnifying observation apparatus according to claim 1 wherein an objective
> lens of said optical system and said imaging device slide in interlock with each other
> while satisfying the relation of $1/a + 1/b = 1/f$ (a: distance between the object to be
> observed and the objective lens, b: distance between the objective lens and the
> imaging device, f: focal length of the objective lens).

'489 patent, claim 4 (emphasis added).

> 9. A magnifying observation apparatus according to claim 7, wherein an objective
> lens of said optical system and said imaging device slide in interlock with each other
> while satisfying the relation of $1/a + 1/b = 1/f$, where a is the distance between the
> object to be observed and the objective lens, b is the distance between the objective
> lens and the imaging device, and f is the focal length of the objective lens.

Id., claim 9 (emphasis added).

　　　Although "claim differentiation is a rule of thumb that does not trump the clear import of

the specification," Edward Lifesciences LLC v. Cook Inc., 582 F.3d 1322, 1332 (Fed. Cir.

2009), under Dunwell's proposed construction the additional limitations in dependent claims 4

36 - OPINION AND ORDER

and 9 would be rendered redundant and superfluous, as would the limiting language in

independent claim 6 which recites nearly identical language.  Additionally, because claim 6

already claims an objective lens and imaging device that each slide while satisfying the relation

$1/a + 1/b = 1/f$, such a limitation need not be imported into the definition of the term "optical

system."  Accordingly, Dunwell's proposed construction would not be a favored construction.

See Comark Commc'n, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (rejecting

construction which would have rendered one claim of patent superfluous or redundant).

Dunwell's definition also tracks the language of the specification.  The third

embodiment teaches in pertinent part:

> "[A]n optical system for focusing the image for the object to be observed on the
> imaging device, . . . the optical system including an objective lens and wherein the
> objective lens of said optical system and said imaging device slide in interlock with
> each other while satisfying the relation of $1/a+1/b=1/f$, where a is the distance
> between the object to be observed and the objective lens, b is the distance between
> the objective lens and the imaging device, and f is the focal length of the objective
> lens."

'489 patent, col. 11, lines 32-44 (emphasis added).

> The predetermined relation utilizes the fact that a magnification, m, obtained by the
> optical system has the relation of m=b/a (a: distance between the object M to be
> observed and the objective lens 313, b: distance between the objective lens 313 and
> the imaging device 315, Fig. 12).  The objective lens 313 and the imaging device 315
> are allowed to slide interlockedly so that a and b form a ratio which affords a
> stationary state between the image pick-up apparatus 302 and the object M to be
> observed, on the basis of a predetermined relation, namely, a relation of $1/a+1/b=1/f$
> (f: focal length of the objective lens), thereby changing m=b/a continuously.  By
> using such a slide mechanism it is made possible to change the magnification in a
> fixed state of the distance between the image pickup apparatus 302 and the object M
> to be observed, that is, a so-called simple zoom structure is formed.  As to the
> interlocking relation of the flare stops 314, 314, . . ., these flare stoops follow the
> optical path T which varies in response to sliding motions of the objective lens 313
> and the imaging device 315.

Id., column 9, lines 48-68 (emphasis added).

37 - OPINION AND ORDER

A section entitled "Disclosure of the Invention" in the specification also teaches:

[I]n the present invention, a simple zooming structure is formed by allowing an objective lens and an imaging device to <u>slide interlockedly</u> while forming a predetermined relation between the two.
This simple zooming structure utilizes the fact that a magnification, m, obtained by an optical system has the relation of <u>m=b/a</u> (a: distance between an object to be observed and the objective lens, b: distance between the objective lens and the imaging device). The value of m=b/a is changed continuously by allowing the objective lens and the imaging device to slide in an interlocked state which satisfies the relation of <u>1/a+1/b=1/f</u> (f: focal length of the objective lens). As a result, it is possible to change magnification while maintaining the image pick-up apparatus at a predetermined certain distance from the object to be observed.

Id., column 4, lines 33-48 (emphasis added).

Although the claims must be read in view of the specification, see <u>Markman v. Westview Instruments, Inc</u>., 52 F.3d 967, 979-980 (Fed. Cir. 1995), it is improper to "read a limitation from the written description into the claims." <u>Comark Commc'n</u>, 156 F.3d at 1186; see also <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1340-1341 (Fed. Cir. 2001). It is improper to import, or "read into" a claim, a limitation from the specification's general discussion, embodiments, and examples. <u>See, e.g.</u>, <u>Enercon GmbH v. Int'l Trade Comm'n</u>, 151 F.3d 1376, 1384 (Fed. Cir. 1998). Rather, the specification will restrict the meaning of a claim term if it "characteriz[es] the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1327 (Fed. Cir. 2002). The specification may also define a term by implication, see <u>Phillips</u>, 415 F.3d at 1321, and may function to limit the claims' scope by indicating that the invention and all of its embodiments fall within only a narrow portion of the potentially broader meaning of a claim term. See <u>SciMed Life Sys.</u>, 242 F.3d at 1343-44.

Here, Dunwell's proposed definition attempts to read limitations from various portions of the specifications into their proposed definition. There is nothing in the specification, either words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope requiring the "optical system" to be limited to a "the value of m=b/a (where 'm' is magnification, 'a' is the distance between the object to be observed and the objective lens, and 'b' is the distance between the objective lens and the imaging device)," or "changes as the objective lens and imaging device each slide while satisfying the relation 1/a + 1/b = 1/f (where 'f' is the focal length of the lens)."

Furthermore, the language of the third embodiment indicates that the inventor intended that embodiment to be just one possible teaching of the claimed invention, not a limitation to be incorporated into the claims themselves. It states, "[I]t can be done easily by those skilled in the art to apply the simple zoom structure of [the third] embodiment to . . . a light-source lamp built-in type structure as in . . . the first and second embodiments . . . ." '489 patent, column 10, lines 37-41.

In regards to the "fixed focal plane" and "magnification-variable" phrases, they are found only in the specification, not the claims. The relevant portion of the specification provides, in pertinent part:

> The use of a magnification-variable optical system having a <u>fixed focal plane</u> is a solution to avoiding [replacing the optical system each time the magnification needs to be changed], but those known heretofore as such magnification-variable structure are not suitable for stand-free observation systems. <u>In more particular terms</u>, a zoom lens is a typical example of such magnification-variable structure, <u>but the principle thereof is such that a focal length is changed continuously by changing a mutual spacing of plural constituent lenses.</u> Its design and structure are complicated and an increase in size of the optical system used therein is unavoidable. <u>Thus, the zoom lens is not suitable to an observation system for stand-free observation in which simple structure and small size are ideal.</u>

39 - OPINION AND ORDER

'489 patent, column 2, line 60-column 3, line 9 (emphasis added).

Here the specification of the '489 patent does not include "words or expressions of manifest exclusion or restriction, representing a clear disavowal" limiting the claim scope to only "fixed focal planes" or be "magnification-variable." See Teleflex, Inc., 299 F.3d at 1327.  In addition, the specification teaches that although "magnification-variable" optical systems having "fixed focal planes" is a solution to replacing the optical system each time magnification needs to be changed, they are not suitable for stand-free observation due to their complexity and increase in size.  See '489 patent, column 2, line 60-column 3, line 9.  The Federal Circuit has recognized that "[w]here the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products . . . ." See Astrazeneca AB v. Mut. Pharm. Co., 384 F.3d 1333, 1340 (Fed. Cir. 2004).  I find that Dunwell's proposed definition includes the same features of optical systems disparaged in the specification, namely the "fixed focal plane" and "magnification-variable" features.  Accordingly, reading those limitations into the term "optical system" would be improper.

Although Dunwell's proposed definition is too narrow and improperly imports limitations from the specification, I find Plaintiffs' proposed definition too broad because it encompasses "zoom lenses."  Plaintiffs concede, and I agree, that "the prior art systems disparaged by the '489 inventors are zoom lens systems includ[e] 'plural constituent lenses,' the 'mutual spacing' of which can be changed."  Pl.'s Claim Construction Reply, p. 19.  The Federal Circuit has consistently held that "where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even

40 - OPINION AND ORDER

though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." SciMed Life Sys., Inc., 242 F.3d at 1341; see also CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366-67 (Fed. Cir. 2002) ("a claim term will not receive its ordinary meaning if the intrinsic evidence shows that the patentee distinguished the term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention.").

Here, the specification distinguishes the "optical system" of the '489 patent from systems utilizing "zoom lenses," which change a "mutual spacing of plural constituent lenses." '489 patent, column 2, line 68-column 3, line 4. The specification teaches that "a zoom lens is a typical example of such magnification-variable structure, but the principle thereof is such that a focal length is changed continuously by changing a mutual spacing of plural constituent lenses." Id., column 3, lines 1-7. The specification, however, goes on to teach that the zoom lens are not ideal because their "design and structure are complicated and an increase in size of the optical system used therein is unavoidable." Id., column 3, lines 7-9. Plaintiffs' proposed definition is too broad because it encompasses zoom lens.

However, I find that Plaintiffs' definition limiting the claim term to a system "capable of forming a focused image" is supported by the claim terms. The claims consistently recite that the "optical system" is for "focusing the image" of an object. See '489 patent, claim 1 ("an optical system for focusing the image of the object to be observed on the imaging device"); Id., claim 6 ("an optical system for focusing the image of the object to be observed on the imaging device"); Id., claim 7 ("an optical system for focusing the image of an object to [sic] located proximate the viewing hole on the imaging device"); Id., claim 11 ("an optical system for focusing the image of

41 - OPINION AND ORDER

an object located proximate the viewing hole"); Id., claim 16 ("an optical system for focusing the image of an object onto the imaging device").  I also find that in line with the claim language, the specification also teaches that the "optical system" is for "focusing the image of the object" to be observed.  See Id., Abstract; see also Id., column 3, lines 36-38 ("an optical system for focusing the image of the object on the imaging device").

In sum, Dunwell's proposed definition would render other claims superfluous and would improperly import language from the specification.  On the other hand, although Plaintiffs' definition properly includes the limitation that the "optical system" is "for focusing the image" of an object, it is unduly broad because it incorporates optical systems which use  zoom lens–lens expressly disparaged in the specification.  For the reasons set forth above, I construe the term "optical system" as "a system including a lens capable of forming a focused image and not configured to change a mutual spacing of plural constituent lenses."

**D. "objective lens of said optical system is movable to adjust magnification" and "objective lens that is movable to adjust magnification"**

Plaintiffs propose that I construe the terms according to their plain meaning, or in the alternative, to mean "lens can be moved to produce images with different amounts of magnification."  Dunwell defines the terms as "an objective lens and an imaging device each slide in concert while maintaining a fixed focal plane such that a magnification at the imaging device changes while the relation $1/a+1/b=1/f$ is preserved."

I do not agree with Plaintiffs that these claim terms would have a plain meaning to one of ordinary skill in the art.  Accordingly, I turn to the parties' proposed definitions.

I find that Dunwell's proposed construction renders several claims superfluous and runs afoul of the doctrine of claim differentiation.  See Beachcombers v. WildeWood Creative Prod., Inc., 31 F.3d 1154, 1162 (Fed. Cir. 1994).  Here, claims 20, 26, and 31 depend on claims 16, 23, and 28, respectively.  Claims 20, 26, and 31 add the following limitation: "wherein an objective lens of said optical system and said imaging device slide in interlock with each other to adjust magnification."  '489 patent, claims 20, 26, 31.  While I recognize that "the doctrine of claim differentiation is not a hard and fast rule of construction, it does create a presumption that each claim in a patent has a different scope."  Comark Comm'n, 156 F.3d at 1187.  That presumption is especially strong when, as here, the limitation in dispute is the only meaningful difference between an independent and dependent claim.  See, e.g., Ecolab Inc. v. Paraclipse, Inc., 285 F.3d 1362, 1375 (Fed. Cir. 2002).

I also find that Dunwell's proposed definition improperly "reads in" limitations from the specification.  See, e.g., Enercon GmbH v. Int'l Trade Comm'n, 151 F.3d at 1384.  Here, the "Disclosure of the Invention" section of the '489 patent provides the following:

> "[I]n the present invention, a simple zooming structure is formed by allowing an objective lens and an imaging device to slide interlockedly while forming a predetermined relation between the two.
> This simple zooming structure utilizes the fact that a magnification, m, obtained by an optical system has the relation of m=b/a (a: distance between an object to be observed and the objective lens, b: distance between the objective lens and the imaging device). The value of m=b/a is changed continuously by allowing the objective lens and the imaging device to slide in an interlocked state which satisfies the relation of $1/a+1/b=1/f$ (f: focal length of the objective lens). As a result, it is possible to change magnification while maintaining the image pick-up apparatus at a predetermined certain distance from the object to be observed."

'489 patent, column 4, lines 33-48.

43 - OPINION AND ORDER

Dunwell's proposed definition attempts to limit the meaning of the claim term by incorporating specific language from the specification.  I find no words or expressions in the specification representing a clear disavowal of claim scope in the language.  Accordingly, I reject Dunwell's proposed definition.

I construe the terms "objective lens of said optical system is movable to adjust magnification" and "objective lens that is movable to adjust magnification" to mean "lens can be moved to produce images with different amounts of magnification and not configured to change a mutual spacing of plural constituent lenses."

**E. "light-source"**

Plaintiffs' define the term as "an object that emits light."  Dunwell originally defined the term to mean "either optical fibers or a separate lamp unit."

The parties disagree as to whether the term "light-source" should be construed in the same manner as "a lamp unit" and "a light-source lamp unit."  Plaintiff contends that the term "light-source" is not used interchangeably with the terms "a lamp unit" and "a light-source lamp unit" because the specification refers to the term "light-source" as a source that <u>emits</u> light, whether it creates it or merely emits it.

I begin my analysis by turning first to the claims themselves.  <u>See</u> <u>Vitronics Corp.</u>, 90 F.3d at 1582.  The term "light-source" is used only in claims 11 and 12.  Claim 12 depends on claim 11.  They recite in relevant part:

11.  A magnifying observation apparatus that includes an image pick-up apparatus . . ., said image pick-up apparatus comprising a casing . . ., the casing enclosing at least . . . a <u>light-source</u> for lighting the object to be observed.

'489 patent, claim 11 (emphasis added).

44 - OPINION AND ORDER

> 12.  A magnifying observation apparatus according to claim 11, wherein said
> <u>light-source</u> is a lamp unit that comprises at least one lamp arranged on a board
> such that the lamp unit can be mounted to and removed from said image pick-up
> apparatus.

'489 patent, claim 12 (emphasis added).

The fact that the limiting language in claim 12 is absent in independent claim 11 indicates

that claim 12 has a different scope and includes limitations not present in the independent claim.

<u>See</u> <u>Kraft Foods, Inc.</u>, 203 F.3d at 1368; <u>see also</u> <u>Phillips</u>, 415 F.3d at 1315.  As such, I do find

that a "light-source" is a lamp unit as Dunwell asserts here.

I turn next to the specification.  The specification teaches that "since the lamp as a <u>light</u>

<u>source</u> incorporated in the image pick-up apparatus illuminates an object to be observed directly

in close proximity thereto, there is no propagation loss which occurs in the use of optical fibers,

and therefore it is possible to use a lamp of a smaller output."  '489 patent, column 3, lines 47-53

(emphasis added).  It also teaches that "by using a plurality of small lamps in a predetermined

state of arrangements it is made possible to accommodate in a narrow space a <u>light source</u> which

can supply a required illuminative force . . . ."  Id., column 4, lines 5-8 (emphasis added).

The specification also refers to optical fibers as "light sources."  The specification recites

as follows:

> The lighting unit 312 comprises a <u>light source</u> 327 and a light condensing guide 328
> <u>for radiating light from the light source</u> 327 efficiently to a portion to be observed.
> In the light source 327, light from an external light-source lamp (not shown) is
> conducted up to the image pick-up apparatus, <u>using a bundle of optical fibers</u>
> extending through a cable 329, and front ends for irradiation of optical fibers 329f
> 329f, . . . of such optical fiber bundle are implanted in an annular holding member
> 330.

'489 patent, column 10, lines 1-10 (emphasis added).

45 - OPINION AND ORDER

> In such observation system, however, the <u>light source for illuminating an object to</u> <u>be observed is formed by optical fibers</u> . . . . More particularly, light is conducted through a bundle of optical fibers <u>from the external light source</u>, and front ends of the optical fibers of the bundle are arranged annular <u>to form an internal light source.</u> The formation of such an <u>internal light source</u> can afford a stronger and uniform illuminating light, but requires the <u>external light source</u>, or the construction of the image pick-up apparatus becomes complicated.

Id., column 2, lines 14-22 (emphasis added).

Here, Dunwell's definition incorporates language from the specification into the claims, in particular, optical fibers. Although the specification describes optical fibers as being light sources in certain observation systems, I find no language showing a clear intent by the inventors to limit the term "light source" to optical fibers. See <u>MySpace, Inc. v. Graphon Corp.</u>, Nos. C-10-0604 EDL, C-10-1156 EDL, 2010 WL 4916429, at *5 (N.D. Cal. 2010). By contrast, Plaintiffs' definition is in accord with how the specification consistently describes the term "light source"–as an object that emits light, whether as an internal or external light source, or whether it creates it or emits it. See <u>Gillette Co. v. Energizer Holdings, Inc.</u>, 405 F.3d 1367, 1379 (Fed. Cir. 2005) (holding that "a claim term [is] properly construed in accordance with a limitation that [is] 'repeatedly and consistently' described in the specification where '[t]hose statements . . . more broadly describe the overall inventions of [the] patent[ ].'") (Citation omitted).

For the reasons set forth above, I construe the term "light source" to mean "an object that emits light."

### F. "light-source lamp"

Plaintiffs define the term as "an object that creates and emits light." Dunwell originally defined the term as "incandescent lamps, fluorescent lamps, and light emitting diodes."

Dunwell contends that the terms "light-source lamp" is used interchangeably with the

46 - OPINION AND ORDER

terms "lamp unit" and "light-source lamp unit."  Responsive Claim Construction Br., p. 29-30.

Here, the term "light-source lamp" appears in claims 1, 2, 7, 34, 37, 39, 40, 41.  These

claims recite as follows:

> 1. A magnifying observation apparatus for reproducing an image of an object to be
> observed which has been picked up by an image pick-up apparatus onto a monitor
> display and observing it, said image pick-up apparatus having a structure with a case
> of an essentially one-handed grapsable [sic] size, said case having a viewing hole
> formed therein and encasing therein at least an imaging device, a control circuit unit
> for the imaging device, an optical system for focusing the image of the object to be
> observed on the imaging device, and a <u>light-source lamp</u> encases by the casing for
> lighting the object to be observed through the viewing hole.

'489 patent, claim 1 (emphasis added).

> 2. A magnifying observation apparatus according to claim 1, wherein said <u>light-
> source lamp is formed as a lamp unit</u> comprising a plurality of lamps arranged in a
> predetermined state on a board in such a manner that the whole of the lamp unit can
> be mounted to and removed from said image pick-up apparatus.

'489 patent, claim 2 (emphasis added).

> 7. A magnifying observation apparatus that includes an image pick-up apparatus for
> reproducing, onto a monitor display, an image of an object located proximate the
> image pick-up apparatus which has been picked up by an image pick-up apparatus
> the image pick-up apparatus including a casing having an uncovered viewing hole
> formed therein and further including at least an imaging device, a control circuit unit
> for the imaging device, an optical system for focusing the image of the object located
> proximate the viewing hole on the imaging device, and a <u>light-source lamp</u> for
> lighting the object to be observed, wherein said <u>light-source lamp is formed as a lamp
> unit</u> comprising a plurality of lamps  arranged in a predetermined state on a board in
> such a manner that the entire lamp unit can be mounted to and removed from said
> image pick-up apparatus.

Id., claim 7 (emphasis added).

> 34. A magnifying observation apparatus according to claim 1, wherein the <u>light-
> source lamp is formed as a lamp unit</u> comprising a plurality of lamps arranged in  a
> predetermined state on a board in such a manner that the whole of the lamp unit can
> be mounted to said image pick-up apparatus.

Id., claim 34 (emphasis added).

47 - OPINION AND ORDER

37. A magnifying observation apparatus according to claim 1, wherein the light-source lamp is formed as a lamp unit comprising a plurality of lamps mounted on a common board, wherein the common board is formed with a power supply circuit for supplying the power to the plurality of lamps, and wherein each one of the plurality of lamps illuminates in response to electrical current.

Id., claim 37 (emphasis added).

39. A magnifying observation apparatus according to claim 1, wherein the optical system defines an optical axis and wherein the light-source lamp comprises lamps mounted at an angle to the optical axis.

Id., claim 39 (emphasis added).

40. A magnifying observation apparatus according to claim 1, wherein the light-source lamp comprises a plurality of light elements mounted on a single circuit board.

Id., claim 40 (emphasis added).

41. A magnifying observation apparatus according to claim 1, wherein the optical system and the light-source lamp are exposed through the viewing hole to environmental conditions outside of the casing.

Id., claim 41 (emphasis added).

Contrary to Dunwell's contention, I find that the claims do not use the terms "light-source lamp" and "lamp unit" interchangeably. As shown above, independent claim 7 and dependent claims 2, 34, and 37 recite that the "light-source lamp is formed as a lamp unit." On the other hand, dependent claims 39 and 40 recite that the "light-source lamp comprises" lights. The phrases "is formed as" and "comprises" suggest that the term "light-source lamp" includes a "lamp unit" and lights rather than is a "lamp unit." See Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1383-84 (Fed. Cir. 2000) ("'A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.'"). Furthermore, the fact that the specification also teaches "the light-source lamp is constituted as a lamp unit comprising plural

48 - OPINION AND ORDER

lamps arranged in a predetermined state on a board," '489 patent, column 4, lines 1-3, lends additional support for the conclusion that the term "light-source lamp" includes at least a "lamp unit" rather than is a "lamp unit."

Finally, Plaintiffs' concede, and I agree that the specification defines the term "light-source lamp." See Pl's Claim Construction Reply, p. 26. The specification states, "The term 'light-source lamp' or 'lamp' as used herein and also in the appended claims is used in a broad concept which covers not only incandescent lamps and fluorescent lamps but also light emitting diodes and the like." '489 patent, column 3, lines 64-68. Since the specification clearly defines the term "light-source lamp," I construe the term to mean "an object used in a broad concept which covers not only incandescent lamps and fluorescent lamps, but also light emitting diodes and the like."

### G. "light-source lamp means"

Plaintiffs propose the following definition: "an incandescent lamp, a fluorescent lamp, a light emitting diode, and equivalents." Dunwell initially proposed that the term to mean "a lamp unit that is mounted to and removed from a board through a hole in the casing and comprised of four 2.5 volt ("V") lamps arranged side by side and connected in series with a voltage of 12 V."

The term "light-source lamp means" is part of a "means-for" claim limitation, and therefore, is subject to means-plus-function treatment under 35 U.S.C. § 112.[8] A patent claim or

---

[8] Pursuant to Rule 4-1(a) of the Scheduling and Discovery Agreement adopted by Judge King on July 29, 2010, the parties were required to "serve on each other party a list of claim terms which that party contends should be construed by the Court, and identify any claim term which that party contends should be governed by 35 U.S.C. § 112(6)." Although Dunwell now takes the position that means-plus-function treatment under 35 U.S.C. § 112 ¶ 6 is improper, when serving its Rule 4-1(a) disclosures on Plaintiffs on October 29, 2010, Dunwell took the

(continued...)

limitation can be expressed as a "means . . . for performing a specified function without the recital of structure, material or acts in support thereof." See 35 U.S.C. § 112 ¶ 6. The statute governs "means-plus-function" limitations and provides, in its entirety:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6.

Construction of a means-plus-function limitation involves two steps. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002). First, the court must identify the claimed function. Id. The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations. Id. It is improper to narrow the scope of the function beyond the claim language. Id. It is equally improper to broaden the scope of the claimed function by ignoring clear limitations in the claim language. Id. Ordinary principles of claim construction govern interpretation of the claim language used to describe the function. Id.

After identifying the claimed function, the court must then determine what structure, if any, disclosed in the specification corresponds to the claimed function. Id. In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function. Id. This inquiry is undertaken from the perspective of a person of ordinary skill in the art. Id. If, however, this

---

[8](...continued)
position that the term "light-source lamp means" was governed by 35 U.S.C. § 112 ¶ 6. See Kolitch Decl. in Supp. of Pls.' Claim Construction Reply, Ex. B., p. 2. Accordingly, I will not consider Dunwell's new position because it violates the Scheduling and Discovery Agreement.

inquiry reveals that no embodiment discloses corresponding structure, the claim is invalid for failure to satisfy the definiteness requirement of 35 U.S.C. § 112 ¶ 2. Cardiac Pacemakers, Inc., 296 F.3d at 1114.

The use of the word "means," which is part of the classic template for functional claim elements, gives rise to "a presumption that the inventor used the term advisedly to invoke the [§ 112 ¶ 6] mandates for means-plus-function clauses." E.g., York Prod., Inc. v. Cent. Tractor Farm & Family Ctr., 99 F.3d 1568, 1574 (Fed. Cir. 1996). However, the presumption is not conclusive. Sage Prod., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1427 (Fed. Cir. 1997). "For example, where a claim uses the word 'means,' but specifies no corresponding function for the 'means,' it does not implicate [§ 112 ¶ 6]." See, e.g., Id. (citation omitted). "Likewise, where a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format." See, e.g., Id. (citation omitted) (emphasis added).

In the present case, the term "light-source lamp means" is recited in claim 16 and 17. Claim 17 depends on claim 16. They state, in their entirety:

> 16. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located proximate to image pick-up apparatus onto a monitor display, said image pick-up apparatus comprising a casing, the casing enclosing at least an imaging device, a control circuit unit for the imaging device, an optical system for focusing the image of an object onto the imaging device, and a light-source lamp means for lighting the object to be observed.

'489 patent, claim 16 (emphasis added).

> 17. A magnifying observation apparatus according to claim 16, wherein said light-source lamp means is a lamp unit that comprises at least one lamp arranged on a board such that the lamp unit can be mounted to and removed from said image pick-up apparatus.

51 - OPINION AND ORDER

Id., claim 17 (emphasis added).

Here, the claim language recites the word "means," and therefore, a presumption arises that the statutory means-plus-function standard was intended to be invoked pursuant to § 112 ¶ 6. It is undisputed that the function of the "light-source lamp means" is "for lighting the object to be observed." Id., claims 16-17; see Pls.' Opening Claim Construction Br., p. 17; see also Responsive Claim Construction Br., p. 21. Having so concluded, I turn to whether the specification or the prosecution history clearly links or associates a structure to the function recited in the claim.[9]

Dunwell's proposed definition includes language from the first embodiment. See '489 patent, column 7, lines 6-35 (teaching that "the lamp unit . . . can be mounted and removed through the board 29 with respect to a mounting hole 30 formed in the case 5" and that "the four lamps 23, 23, . . . are connected in series, and assuming that a rated voltage of each lamp 23 is 2.5 V, a voltage of 12 V is applied to the series-connected lamps."). Dunwell's proposed structure, however, is too restrictive in light of the specification and would improperly read limitations from the first embodiment into the claim terms. I also find that the specification does not clearly associate Dunwell's proposed structure to the function. Accordingly, I do not agree with Dunwell's proposed definition.

---

[9] Dunwell contends that means-plus-function treatment under 35 U.S.C. § 112 ¶ 6 is improper because dependant claim 17 provides the corresponding structure for the stated function in independent claim 16. However, Dunwell's assertion runs contrary to 35 U.S.C. § 112 ¶ 6, which provides that the means-plus-function does not apply when the same claim providing the means-plus-function language also provides the function and corresponding structure. Here, the corresponding structure of the means-plus-function is found in claim 17, not claim 16. Accordingly, Dunwell's assertion lacks merit.

52 - OPINION AND ORDER

Plaintiffs' proposed definition is derived from the specification which teaches that "[t]he term 'light-source lamp' or 'lamp' as used herein and also in the appended claims is used in a broad concept which covers not only incandescent lamps and fluorescent lamps but also light emitting diodes and the like."[10]  '489 patent, column 3, lines 64-68.  This construction associates the structure with performance of the function.  Specifically, it associates incandescent lamps, fluorescent lamps, and light emitting diodes and the like with lighting the object to be observed as recited in the claims.  As such, I construe the term "light-source lamp means" as "an incandescent lamp, a fluorescent lamp, a light emitting diode, and equivalents."

**H. "encased by the casing"**

Plaintiffs define the term as "contained within the casing."  Dunwell defines the term as "a light-source lamp unit comprised of one or more lamps arranged on a board, where the unit is wholly contained within the interior of the bent front-end portion of the case of an image pick-up apparatus and where the unit can be easily removed from and re-mounted to the case for the simple replacement of light bulbs of the lamp unit."

The term "encased by the casing" appears only in amended claim 1.[11]  Claim 1 recites, in its entirety:

---

[10] Plaintiffs concede the term "and the like" is not specific enough to provide a description of alternative structure, but assert that the term "and equivalents" in their definition is taken directly from 35 U.S.C. § 112 ¶ 6, which states that a mean-plus-function claim "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." (Emphasis added).

[11] Because construing the term "light-source lamp encased by the casing" requires separate construction of the terms "light-source lamp" and "encased within the casing," I construe the claim terms separately.

1. A magnifying observation apparatus for reproducing an image of an object to be observed which has been picked up by an image pick-up apparatus onto a monitor display and observing it, said image pick-up apparatus having a structure with a case of an essentially one-handed graspable size, and said case having an uncovered viewing hole formed therein and encasing therein at least an imaging device, control circuit unit for imaging device, an optical system for focusing the image of the object to be observed on the imaging device, and a light-source lamp <u>encased by the casing</u> for lighting the object to be observed through the viewing hole.

'489 C1 patent, claim 1 (emphasis added).

Each party contends that their definition is supported by the claims and specification. Plaintiffs further assert that the dictionary definition of the word "encase" as provided by Webster's Third New Int'l Dictionary, p. 745 (unabridged ed. 1993) demonstrates that the claim term here does not limit the object to be completely surrounded or sealed within a case. Webster's Third New Int'l Dictionary defines the word "encase" as follows: "to enclose in, place in, or provide with a case."

I disagree with Plaintiffs' proposed definition. Here, I find no clear intention by the patentee to limit the scope of the patent to a light-source lamp that is not wholly contained within the casing. In fact, the claim language indicates the exact opposite, stating, "[S]aid case having an uncovered viewing hole formed therein and <u>encasing therein</u> at least . . . a light-source lamp encased by the casing . . . ." '489 C1 patent, claim 1 (emphasis added). Consistent with the claim language, the language in the specification teaches that the "image pick-up apparatus 1 according to [the first] embodiment includes an imaging means 2, an optical means 3 and a light source means 4, which are <u>enclosed within</u> a case 5." '489 patent, column 5, lines 46-49. The mere fact that the casing has an uncovered viewing hole does not in itself mean that the light-source lamp may not be "completely surrounded" or "wholly contained within" the casing.

Although I disagree with Plaintiffs' proposed definition, I also disagree with Dunwell's

54 - OPINION AND ORDER

definition because it is too narrow. Dunwell notes that the term "light-source lamp" appears in claims 1, 2, 7, 24, 29, 34, 37, 40, and 41. It argues that because the light-source lamp is required to be either encased by the casing of the magnifying observation apparatus (independent claim 1 and dependent claims 2, 37, 40, and 41), mounted to it (independent claim 7 and dependent claims 24 and 29), or both "encased by the casing" and mounted to the magnifier as in claim 34 (which is also defendant on claim 1), it necessarily follows that the term "light-source lamp" be defined as being mounted to and encased by the casing.

Here, the relevant claims recite, in their entirety, as follows:

1. A magnifying observation apparatus for reproducing an image of an object to be observed which has been picked up by an image pick-up apparatus onto a monitor display and observing it, said image pick-up apparatus having a structure with a case of an essentially one-handed graspable size, said case having an uncovered viewing hole formed therein and encasing therein at least an imaging device, a control circuit unit for the imaging device, an optical system for focusing the image of the object to be observed on the imaging device, and a light-source lamp encased by the casing for light the object to be observed through the viewing hole.

'489 C1 patent, claim 1 (emphasis added).

34. A magnifying observation apparatus according to claim 1, wherein the light-source lamp is formed as a lamp unit comprising a plurality of lamps arranged in a predetermined state on a board in such a manner that the whole of the lamp unit can be mounted to said image pick-up apparatus.

'489 patent, claim 34.

7. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing, onto a monitor display, an image of an object located proximate the image pick-up apparatus which has been picked up by an image pick-up apparatus the image pick-up apparatus including a casing having a viewing hole formed therein and further including at least an imaging device, a control circuit unit for the imaging device, an optical system for focusing the image of an object located proximate the viewing hole on the imaging device, and a light-source lamp for lighting the object to be observed, wherein said light-source lamp is formed as a lamp unit comprising a plurality of lamps arranged in a predetermined state on a board in such a manner

55 - OPINION AND ORDER

that the entire lamp unit can be mounted to and removed from said image pick-up apparatus.

Id., claim 7.

24. A magnifying observation apparatus according to claim 23, further comprising a light-source lamp unit that includes at least one lamp arranged on a board such that the lamp unit can be mounted to and removed from said image pick-up apparatus.

Id., claim 24.

29. A magnifying observation apparatus according to claim 28, further comprising a light-source lamp unit that includes at least one lamp arranged in the image pick-up apparatus casing on a board such that the lamp unit can be mounted to and removed from said image pick-up apparatus.

Id., claim 29.

34. A magnifying observation apparatus according to claim 1, wherein the light-source lamp is formed as a lamp unit comprising a plurality of lamps arranged in a predetermined state on a board in such a manner that the whole of the lamp unit can be mounted to said image pick-up apparatus.

'489 C1 patent, claim 34.

The fact the limitations recited in the dependant claims are not recited in the independent claims suggests that the inventors did not intend the claim term to include the limiting language. See Liebel -Flarshiem Co.,358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its highest.").  Accordingly, I will not read limitations found in the dependant claims into this claim term as Dunwell would have me do here.

Dunwell asserts that Plaintiffs' definition impermissibly broadens claim 1 because the specification teaches that the light-source lamp be located inside the bent front-end portion of the casing and be capable of being easily removed and remounted to the case for the simple

replacement of lamps.  See '489 patent, column 4, lines 1-32; Id. column 7, lines 44-49.  Dunwell

further asserts that the '489 patent requires the image light to originate from the bent front end

portion of the casing because this design improves the handiness of the magnifier relative to prior

art magnifiers, and allows for the removal of a reflecting mirror.  See Id., column 4, lines 14-33.

    The claim language, however, does not require such a limitation.  Here claim 1 does not

include the limitation that the casing be bent in any fashion.  Rather, the additional limitation

comes from dependent claims, including claim 3, which provides in relevant part: "3. A

magnifying observation apparatus according to claim 1, wherein a <u>front end portion of said image</u>

<u>pickup apparatus is bent sideways,</u> and said imaging device is incorporated in the image pick-up

apparatus . . . ."  '489 patent, claim 3 (emphasis added).  The absence of the bent casing limitation

in claim 1 indicates that reading this into the claim term would narrow the claims beyond that

intended by the inventors.  See Liebel -Flarshiem Co.,358 F.3d at 910.

    Similarly, independent claim 7, like claim 3 also does not include the limitation that the

casing be bent.  Claim 7 provides as follows:

> 7. A magnifying observation apparatus that includes an image pick-up apparatus
> for reproducing, onto a monitor display, an image of an object located  proximate
> the image pick-up apparatus which has been picked up by <u>an image pick-up</u>
> <u>apparatus the image pick-up apparatus including a casing</u> having an uncovered
> viewing hole formed therein and further including at least an imaging device, a
> control circuit unit for the imaging device, an optical system for focusing the
> image of the object located proximate the viewing hole on the imaging device,
> and a light-source lamp for lighting the object to be observed, wherein said light-
> source lamp is formed as a lamp unit comprising a plurality of lamps arranged in a
> predetermined state on a board in such a manner that the entire lamp unit can be
> mounted to and removed from said image pick-up apparatus.

'489 C1 patent, claim 7.

57 - OPINION AND ORDER

Claim 8, which depends on claim 7, adds, among other things, the limitation that the "front end portion of said image pickup apparatus is bent sideways." '489 patent, claim 8. The absence of this requirement in independent claim 7 adds additional support that the casing need not always be bent.

In addition, I find Dunwell's reliance on the specification misplaced. See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (stating that generally, a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a "clear intention" to limit the claim's scope with "words or expressions of manifest exclusion or restriction."). In context, the language that Dunwell aims to incorporate into the claims from the specification are those simply used to teach users about the apparatus. They do not in any way show a clear intent of the patentee to limit the claims' scope. See In re Goodman, 11 F.3d 1046, 1050 (Fed. Cir. 1993) ("[T]he specification must teach those of skill in the art 'how to make and how to use the invention as broadly as it is claimed.'") (Citation omitted).

Here, the specification teaches that the "reason why the lamp 26 is . . . made detachable wholly as one unit is that the replacement thereof should be done in a simple manner to further facilitate the use thereof . . . ." '489 patent, column 7, lines 44-49. It also teaches that the "front end portion of the image pick-up apparatus is bent sideways . . . . [making it possible] to make observation in a sideways facing state of the image pick-up apparatus . . . ." Id., column 4, lines 14-33. Although the specification describes a bend in the invention, I find no language clearly showing that the patentees intended to limit the claims in such a way. See MySpace, Inc. v. Graphon Corp., Nos. C-10-0604 EDL, C-10-1156 EDL, 2010 WL 4916429, at *5 (N.D. Cal. 2010) ("Limitations from the specification, . . . such as from the preferred embodiment, cannot be

58 - OPINION AND ORDER

read into the claims absent a clear intention by the patentee to do [so]."). Furthermore, although Figures 1 and 5 illustrate that the light-source lamp is located in the bent front-end portion of the case, the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration. See Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1306-7 (Fed. Cir. 2003) (stating that "the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration.").

In light of the above, I construe the term "encased by the casing" to mean "wholly contained within the casing."

### I. "light-source lamp encased by the casing"

Plaintiff defines the term as "an object that creates and emits light, contained within the casing." Dunwell's originally defined the term as "a light-source lamp unit comprised of one or more lamps arranged on a board, where the unit is wholly contained within the interior of the bent front-end portion of the case of an image pick-up apparatus and where the unit can be easily removed from and re-mounted to the case for the simple replacement of light bulbs of the lamp unit."

Because the parties ask me to construe the terms "light-source lamp" and "encased by the casing" separately, I construe this claim term by combining the definitions of the two claim terms "light-source lamp" and "encased by the casing." Accordingly, I construe the term "light-source lamp encased by the casing" to mean "an object used in a broad concept which covers not only incandescent lamps and fluorescent lamps, but also light emitting diodes and the like, wholly contained within the casing."

59 - OPINION AND ORDER

**J. "lamp unit" and "light-source lamp unit"**

Plaintiff defines the term as "at least one lamp attached to a board."  Dunwell initially

defined the term to mean "one or more lamps arranged on a board, where the unit can be easily

removed from and re-mounted to the bent front-end portion of an image pick-up apparatus for the

simple replacement of lamps on the board."

As a preliminary matter, both parties agree that the terms "lamp unit" and "light-source

lamp unit" are used interchangeably in the specification and the claims.  See Pls.' Opening

Construction Brief, p. 18; Pls.' Construction Brief Reply, p. 25; Responsive Construction Claim

Brief, p. 18.  Plaintiffs concede that the phrase "one or more lamps arranged on a board" in

Dunwell's proposed definition is essentially equivalent to their proposed definition, and admit

that this would be a reasonable construction of either term.  Pls.' Opening Claim Construction

Br., p. 14-15.  Accordingly, I construe both terms to mean at least "one or more lamps arranged

on a board."

I disagree with Dunwell's proposed definition because it renders language of dependent

claims superfluous and is therefore improper.  See Stumbo v. Eastman Outdoors, Inc., 508 F.3d

1358, 1362 (Fed. Cir. 2007) (holding that a definition that renders claim language superfluous is

"a methodology of claim construction that this court has denounced").  Here the term "lamp unit"

appears in claims 2, 7, 12, 24, 29, 34, and 37.  The term "light-source lamp unit" appears in

claims 24 and 29.  All of these claims, except for claims 34 and 37, recite that the "lamp unit can

be mounted to and removed from said image pick-up apparatus."  '489 patent, claims 2, 7, 12, 24,

29 (emphasis added).  Claim 34 recites that the "lamp unit can be mounted to said image pick-up

apparatus," whereas claim 37 recites that the "lamp unit compris[es] a plurality of lamps mounted

on a common board . . . ."  Id., claims 34, 37 (emphasis added).

Claims 2 and 12 recite nearly identical language and depend on claims 1 and 11,

respectively.  They recite as follows: "A magnifying observation apparatus according to claim . .

., wherein said light-source is a lamp unit that comprises at least one lamp arranged on a board

such that the lamp unit can be mounted to and removed from the image pick-up apparatus."  Id.,

claims 2, 12 (emphasis added).  Similarly, claim 34, which depends on claim 1, states in its

entirety: "A magnifying observation apparatus according to claim 1, wherein the light-source

lamp is formed as a lamp unit comprising a plurality of lamps arranged in a predetermined state

on a board in such a manner that the whole of the lamp unit can be mounted to said image pick-

up apparatus." '489 C1 patent, claim 34 (emphasis added).

A thorough reading of the claims suggests that the inventors of the '489 patent did not

intend the term "lamp unit" to be so narrowly construed as to include the limitation that it be

easily removed and remounted.  Here, the only independent claim reciting that the lamp unit can

be mounted and removed is claim 7, which recites that "the entire lamp unit can be mounted to

and removed from said image pick-up apparatus." '489 patent, claim 37 (emphasis added).

Similarly, claim 12 recites in its entirety:

> 12.  A magnifying observation apparatus according to claim 11, wherein said light-
> source is a lamp unit that comprises at least one lamp arranged on a board such that
> the lamp unit can be mounted to and removed from said image pick-up apparatus.

Id., claim 12 (emphasis added).

If this court were to adopt Dunwell's proposed definition, then much of the language in

claim 12 would be rendered superfluous because there would be no need for the phrase "at least

one lamp arranged on a board such that the lamp unit can be mounted to and removed from said

image pick-up apparatus" as it would already be included in the claim term's definition.  Thus,

the language of claim 12 counsels against imposing the limitations suggested by Dunwell.

Furthermore, under the doctrine of claim differentiation, this dependent claim gives rise to a

presumption that the broader independent claim is not confined to this limitation.  See Phillips,

415 F.3d at 1315.

I turn next to the specification.  See Markman, 52 F.3d at 979 (stating that patent claims

must be read in light of the specification).  Here the specification provides, in relevant part:

> [T]he light-source lamp is constituted as a lamp unit comprising plural lamps
> arranged in a predetermined state on a board. The whole of the lamp unit can be
> mounted and removed.   That is, by using a plurality of small lamps in a
> predetermined state of arrangement it is made possible to accommodate in a narrow
> space a light source which can supply a required illuminative force, and obtain
> illumination which is uniform and does not give rise to unevenness in luminance for
> an object to be observed.  Besides, since the whole of the lamp unit can be mounted
> and removed, it is possible to effect the replacement of lamps easily."

'489 patent, column 4, lines 1-13 (emphasis added).

The specification simply describes how the lamp unit is used in the apparatus and, as

Plaintiffs point out, merely teaches the features of particular embodiments and improvements

over prior art, including its ability to provide sufficient brightness.  See Id., column 4, lines 5-13.

The specification teaches one of the "objects" of the invention is to have a structure "which does

not require the use of optical fibers."  Id., column 3, lines15-17.  This is done, in part, by

incorporating a lamp unit, which is not permanently fixed inside the apparatus, but rather one that

has the capability of being "mounted and removed" easily.  Id.

The embodiments and their accompanying figures describe the lamp unit as being placed

in the front-end portion of the casing.  Id., column 7, lines 6-10; Id., column 8, lines 9-20; Id.,

62 - OPINION AND ORDER

Figures 2, 5, 6.  However, limitations found only in the specification are not to be read into the claims if the claim language is broader than the specification.  <u>Electro Med. Sys.</u>, 34 F.3d at 1054.  Here, independent claim 11 does not include this limiting language and therefore, including this limitation in the definition of the term would improperly narrow the scope of the claims.  Although the claims must be construed in light of the specification, it is important "not to confuse exemplars or preferred embodiments in the specification that serve to teach and enable the invention with limitations that define the outer boundaries of claim scope."  <u>Intervet Inc. v. Merial Ltd.</u>, 617 F.3d 1282, 1287 (Fed. Cir. 2010).  Dunwell's reliance on the specification, including its embodiments and accompanying figures, to narrow the claim terms is unavailing.

In light of the above, I construe the terms "lamp unit" and "light-source lamp unit" as "one or more lamps arranged on a board."

### K. "lamp unit can be mounted to and removed from" and "lamp unit can be mounted to"

Plaintiffs define the term according to its plain meaning, or in the alternative, as "lamp unit is removable as a whole."  Dunwell proposes that the term mean "the whole of the lamp unit can be mounted and removed for the simple replacement of lamps of the lamp unit."[12]

Because Plaintiffs agree that this claim term may be defined as "the whole of the lamp unit can be mounted and removed," the issue is whether the claim term should also include the

---

[12] Plaintiffs' assertion that Dunwell's proposed language improperly adds a functional limitation is unavailing.  Contrary to Plaintiffs' assertion, "[t]he use of . . . functional language to construe and explain a claim term is not improper.  A description of what a component does may add clarity and understanding to the meaning and scope of the claim. The criterion is whether the explanation aids the court and the jury in understanding the term as it is used in the claimed invention."  <u>Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.</u>, 616 F.3d 1357, 1366 (Fed. Cir. 2010).

limitation that the mounting and removal of the lamp unit is "for the simple replacement of lamps of the lamp unit."  See Pls.' Opening Claim Construction Br., p. 20.  Here, none of the asserted claims cited by Dunwell include the limitation that the mounting and removal of the lamp unit is for the simple replacements of lamps.  Rather, this limitation is derived from the specification, which teaches that because the "whole of the lamp unit can be mounted and removed, it is possible to effect the replacement of lamps."  Id., column 4, lines 10-13.  The second embodiment also describes that the lamp unit should be detachable in a simple manner.  As noted above, however, a court should generally not "import[ ] limitations from the specification into the claims absent a clear disclaimer of claim scope," Andersen Corp., 474 F.3d at 1373.  Further, the Federal Circuit has repeatedly warned against confining the claims to specific embodiments of the invention in the specification.  Phillips, 415 F.3d at 1323.  Because there is no clear disclaimer of scope in the specification here, I construe the terms to mean "the whole of the lamp unit can be mounted and removed."

**L. "wherein the common board is supplied with a power supply circuit for supplying power to a plurality of lamps"**

I decline to construe this claim term because it was served on Plaintiffs on December 10, 2010–after the deadline set forth in the Scheduling and Discovery Agreement.  See Kolitch Decl. in Supp. of Pl.'s Opening Claim Construction Br.,  p. 8-9.  The term that the parties had initially agreed to construe under Rule 4-1 of the Scheduling and Discovery Agreement was "power supply circuit," not "wherein the common board is supplied with a power supply circuit for supplying power to a plurality of lamps."  See Id.  Accordingly, I will construe the term "power

supply circuit," and not "wherein the common board is supplied with a power supply circuit for supplying power to a plurality of lamps."

**M. "a front end portion of said image pick-up apparatus is bent sideways"**

Plaintiffs define the claim term as "a front end portion of the image pick-up apparatus is bent in an inclined state."  Dunwell defines the term to mean "a front-end portion of the image pick-up apparatus faces a different direction than the back-end portion of the image pick-up apparatus."

The claim term is recited in dependent claims 3, 8, 13, 18, 25, and 30.  Claims 3 and 8 depend on claims 1 and 7, respectively, and provide the following identical limitations:

> 3. A magnifying observation apparatus according to claim 1, wherein <u>a front end portion of said image pickup apparatus is bent sideways</u>, and said imaging device is incorporated in the image pick-up apparatus in such a manner that a light receiving surface of the imaging device is orthogonal to an optical axis of an image light which is incident from the thus-bent front end portion of the image pick-up apparatus.

'489 patent, claim 3 (emphasis added).

> 8. A magnifying observation apparatus according to claim 7, wherein <u>a front end portion of said image pickup apparatus is bent sideways</u>, and said imaging device is incorporated in the image pick-up apparatus in such a manner that a light receiving surface of the imaging device is orthogonal to an optical axis of an image light which is incident from the thus-bent front end portion of the image pick-up apparatus.

Id., claim 8 (emphasis added).

Similarly, dependent claims 13, 18, 25, and 30 recite the following:

> A magnifying observation apparatus according to claim . . ., wherein <u>a front end portion of said image pick-up apparatus is bent sideways</u>.

Id., claims 13, 18, 23, 30 (emphasis added).

The first embodiment of the '489 patent teaches:

65 - OPINION AND ORDER

[The image pick-up apparatus's] front end portion is bent in an <u>inclined state</u> so as to be suitable for observing the face skin while the apparatus is held by one hand.

Id., column 5, lines 50-52 (emphasis added).

The second embodiment recites nearly identical language:

[A] front end portion of the apparatus is bent in an <u>inclined state with respect to the body portion</u> to suit the observation of, for example, the face skin while the body portion is held by one hand.

Id., column 8, lines 16-20 (emphasis added).

Although the language in the embodiments lend some support for Plaintiffs' proposed definition, I find other portions of the specification illuminating as well.  See <u>Phillips</u>, 415 F.3d at 1312 (stating that a person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

The "Background Art" section of the specification provides in pertinent part:

Another improvement resides in that a <u>front end portion of the image pick-up apparatus is bent sideways with respect to the body portion</u> so that it can be handled in a direction which permits easy observation.

'489 patent, column 2, lines 41-45 (emphasis added).

It is a further object of the present invention to provide a structure of an image pick-up apparatus having a <u>front end portion bent sideways with respect to a body portion</u> thereof . . . .

Id., column 3, lines 18-24 (emphasis added).

Similarly, the section entitled "Disclosure of Invention" in the specification recites in relevant part:

In the present invention, moreover, <u>a front end portion of the image pick-up apparatus is bent sideways with respect to the body portion</u> thereof . . . .

66 - OPINION AND ORDER

Id., column 4, lines 14-21 (emphasis added).

Here, the claims expressly recite that the front end portion of the pick-up apparatus as "bent sideways." They, however, do not state what the front end portion is bent sideways to. The phrase "bent sideways" is a relative concept that can only exist in relation to some reference. Accordingly, I turn to the specification for guidance. See Phillips, 415 F.3d at 1315 (stating that claims "must be read in view of the specification, of which they are a part") (citation omitted); see also Vitronics Corp., 90 F.3d at 1582 (stating that when "interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history.").

The specification in the present case makes clear what the inventors of the '489 patent contemplated as their invention. The second embodiment teaches that the "front end portion of the apparatus is bent in an inclined state with respect to the body portion to suit the observation . . . ." '489 patent, column 8, lines 16-20 (emphasis added). Similarly, the language in the "Background Art" section teaches that the "front end portion of the image pick-up apparatus is bent sideways with respect to the body portion so that it can be handled in a direction which permits easy observation." Id., column 2, lines 41-45 (emphasis added); Id., column 3, lines 18-25 ("[i]t is a further object of the present invention to provide a structure of an image pick-up apparatus having a front end portion bent sideways with respect to a body portion thereof . . . .") (emphasis added). Furthermore, the "Disclosure of the Invention" section in the specification provides that "[i]n the present invention, . . . a front end portion of the image pick-up apparatus is bent sideways with respect to the body portion thereof . . . ." Id., column 4, lines 14-16 (emphasis added).

In sum, the specification describes the front end portion as being "bent sideways" and "bent in an inclined state" with respect to the body portion of the image pick-up apparatus. Accordingly, I construe the claim term to mean "a front end portion of the image pick-up apparatus is bent in an inclined state with respect to the body portion of the pick-up apparatus."

**N. "proximate"**

Plaintiffs defines the term "proximate" as "abutted against or in close proximity." Dunwell declines to provide a definition.

The parties dispute whether the claim term needs construction in the first instance. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy." U.S. Surgical Corp., 103 F.3d at 1568.  Here the term "proximate" appears repeatedly in the body of the claims and is also recited in the specification.  Accordingly, I find it necessary to construe this claim term.

The term "proximate" appears in claims 7, 11, 16, 19, 23, and 28.  They recite in pertinent part as follows:

> 7. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing, onto a monitor display, an image of an object located proximate the image pick-up apparatus . . ., an optical system for focusing the image of an object located proximate the viewing hole on the imaging device . . . .

'489 patent, claim 7 (emphasis added).

> 11. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located proximate the image pick-up apparatus . . ., an optical system for focusing the image of an object located proximate the

viewing hole on the imaging device, and a light-source for lighting the object to be observed.

Id., claim 11 (emphasis added).

16. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located <u>proximate</u> to image pick-up apparatus . . . .

Id., claim 16 (emphasis added).

19. A magnifying observation apparatus according to claim 16, further comprising a viewing hole formed in the casing and wherein said optical system focuses the image of an object located <u>proximate</u> the viewing hole on the imaging device.

Id., claim 19 (emphasis added).

23. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located <u>proximate</u> the image pick-up apparatus . . ., an optical system for focusing the image of an object located <u>proximate</u> the viewing hole . . . .

Id., claim 23 (emphasis added).

28. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located <u>proximate</u> the image pick-up apparatus . . ., an optical system located in the image pick-up apparatus for focusing the image of an object located <u>proximate</u> the viewing hole . . . .

Id., claim 28 (emphasis added).

Plaintiffs also refer me to the word "proximity" in the "Disclosure of the Invention"

section of the specification, which teaches:

[S]ince the lamp as a light source incorporated in the image pick-up apparatus illuminates an object to be observed directly in close <u>proximity</u> thereto, there is no propagation loss which occurs in the use of optical fibers, and therefore it is possible to use a lamp of a smaller output.

Id., column 3, lines 47-52.

The term "proximate" in the claims refers to the location of the image pick-up apparatus

or viewing hole relative to the object to be observed.  The term "proximity" in the specification

refers to the location of the pick-up apparatus relative to the object to be observed.

69 - OPINION AND ORDER

Dunwell argues that the '489 patent does not teach when an object is or is not located proximate to an image pick-up apparatus and thus the claims reciting the term "proximate" fail on the grounds of both indefiniteness and lack of written description in the specification. Because Dunwell cites no authority in support of its argument, I assume that Dunwell refers to 35 U.S.C. § 112 ¶¶ 1-2.  35 U.S.C. § 112 ¶ 1 provides that a "specification shall contain a written description of the invention."  "Adequate written description means that the applicant, in the specification, must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the claimed invention."  Agilent Tech., Inc. v. Affymetrix, Inc., 567 F.3d 1366, 1379 (Fed. Cir. 2009) (citations omitted).  Stated otherwise, the specification "considered as a whole must convey to one of ordinary skill in the art, either explicitly or inherently, that [the inventor] invented the subject matter claimed in the . . . patent."  See Reiffin v. Microsoft Corp., 214 F.3d 1342, 1346 (Fed. Cir. 2000).  "[W]hatever the specific articulation, the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."  Ariad Pharm., Inc. v. Eli Lilly and Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010).  "[C]ompliance with the 'written description' requirement of § 112 is a question of fact."  Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

On the other hand, a claim is found invalid for indefiniteness pursuant to 35 U.S.C. § 112 ¶ 2 "if, when read in light of the specification, it does not reasonably apprise those skilled in the art of the scope of the invention."  See Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1342 (Fed. Cir. 2003).  "[A] a claim is indefinite under § 112 ¶ 2 if it is "insolubly ambiguous, and no narrowing construction can properly be adopted."  Id. (citations omitted).  "Because the claims of a patent are afforded a statutory presumption of validity, overcoming the

70 - OPINION AND ORDER

presumption of validity requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence." Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1376 (Fed. Cir. 2001).

However, "any argument regarding invalidity of the claim for lack of enablement or indefiniteness of the claim is 'neither appropriate nor acceptable at the claim construction stage.'" See, e.g., Divix Golf, Inc. v. Mohr, Civil No. 05CV1488 JAH (CAB), 2007 WL 5704046, at *28 (S.D. Cal. 2007); see also Intervet Am., Inc. v. Kee-Vet Lab., Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("Ambiguity, undue breadth, vagueness, and triviality are matters which go to claim validity for failure to comply with 35 U.S.C. § 112 ¶ 2, not to interpretation or construction."); Waddington N. Am., Inc. v. Sabert Corp., Civil Action No. 09-4883 (GEB), 2010 WL 4363137, at *2 (D.N.J. 2010) ("Lack of written description is most appropriately addressed at summary judgment, and, while indefiniteness has the same construction underpinnings as a Markman hearing, two reasons make it more appropriate to defer it until summary judgment: (1) its potentially dispositive, patent-invalidating nature and (2) the high burden of proof required to show indefiniteness."); ASM Am., Inc. v. Genus, Inc., No. C-01-2190-EDL, 2002 WL 1892200, *15 (N.D. Cal. 2002) (holding that a court "must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not . . . during the claim construction proceedings"); Harrah's Entm't, Inc. v. Station Casinos, Inc. 321 F. Supp. 2d 1173, 1176 (D. Nev. 2003) ("[T]he court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness."); Biedermann Motech GmbH v. Acme Spine, LLC, No. CV 06-3619 SJO (PLAx), 2007 WL 6210841, *13 (C.D. Cal. 2007) (stating "it is somewhat unusual to discuss the written description requirement of 35 U.S.C. § 112(1) in a

71 - OPINION AND ORDER

claim construction motion"); but see j2 Global Commc'ns Inc. v. Captaris Inc., No. CV 09–04150
DDP (AJWx), 2011 WL 837923, at *6 (C.D. Cal. 2011) (concluding at the claim construction
stage that the claim term was not indefinite under 13 U.S.C. § 112 ¶ 2).

I find that Dunwell's assertion is not proper at the claim construction stage.  Moreover, I
find that Dunwell fails to meet the high burden of proof required by a party challenging a patent
based on lack of enablement or indefiniteness.  See, e.g., Halliburton Energy Servs., Inc. v. M-I
LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).  It must be shown by clear and convincing
evidence that the written description and enablement requirements of 35 U.S.C. § 112 ¶ 1 are not
met.  See, e.g., Sitrick v. Dreamworks, LLC, 516 F.3d 993, 999 (Fed. Cir. 2008).  Similarly,
indefiniteness is proven only "where an accused infringer shows by clear and convincing
evidence that a skilled artisan could not discern the boundaries of the claim" based on the
intrinsic evidence or knowledge of the relevant art area.  See Halliburton Energy Servs., Inc., 514
F.3d at 1249-50.  Accordingly, even if I were to address whether the claim term is invalid for
lack of enablement or indefiniteness, I find Dunwell's argument unavailing here because it
provides no analysis and fails to set forth clear and convincing evidence in support of its
argument.

Dunwell asserts that as a matter of law the term "proximate" has no patentable weight
because it relates to the material intended to be worked upon as opposed to defining an aspect of
the invention's structure.  It cites Ex Parte Masham, 2 USPQ2d 1647, 1987 Pat. App. Lexis 23, at
*3 (Bd. Pat. App. & Inter. 1987) for the proposition that "a recitation with respect to material
intended to be worked upon by a claimed apparatus does not impose any structural limitations

upon the claimed apparatus which differentiates it from a prior art apparatus satisfying the structural limitations of that claimed."

The decision in <u>Ex Parte Masham</u>, however, is not binding precedent on this court because it is a USPTO examiner's opinion.  <u>See</u> <u>Fromson v. Advance Offset Plate, Inc.</u>, 755 F.2d 1549, 1555 (Fed. Cir. 1985) (concluding that "[t]he Examiner's decision, on an original or reissue application, is never binding on a court.").  Furthermore, <u>Ex Parte Masham</u>, 1987 Pat. App. Lexis 23, at *2-*3 is distinguishable on its facts.  There the examiner concluded that "a recitation with respect to the material intended to be worked upon by a claimed apparatus does not impose any structural limitations upon the claimed apparatus <u>which differentiates it from a prior art apparatus satisfying the structural limitations of that claimed</u>."  <u>Id.</u> (emphasis added).  In contrast to <u>Ex Parte Masham</u>, here the issue is claim construction, not whether the structural limitations of the invention differentiate it from prior art.  Accordingly, I find Dunwell's reliance on <u>Ex Parte Masham</u> unavailing.

I turn next to whether the term "proximity" may be defined, in part, as "in close proximity."  I find this definition circular because it includes the term which I have been asked to define, and as such, any ambiguity would remain if I were to include this phrase in the term's definition.  <u>See</u> <u>Sparton Corp. v. U.S.</u>, 68 Fed. Cl. at 47.

Turning to the specification, I find nothing limiting the term's scope to "abutted against." <u>See</u> <u>Home Diagnostics, Inc. v. Lifescan, Inc.</u>, 381 F.3d 1352, 1358 (Fed. Cir. 2004) (stating that "[a]bsent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language.").

73 - OPINION AND ORDER

Having so concluded, I turn to the prosecution history. See Phillips, 415 F.3d at 1314 (stating the order of importance of sources is "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.") (Citation omitted). Plaintiffs point me to a portion of the prosecution history where the USPTO examiner stated that "the focus point of the optical system is always proximate the image pickup device . . . . The reason [being that] the device is intended to be used by being placed in contact or nearly in contact with the object to be observed." See Kolitch Decl. in Supp. of Pl.'s Opening Claim Construction Br., Ex. H, p. PMX000094 (emphasis added).

"A patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." Univ. Of Pittsburg of Commonwealth Sys. of Higher Educ. V. Hedrick, 573 F.3d 1290, 1297 (Fed. Cir. 2009). "Such a disavowing statement must be so clear as to show reasonable clarity and deliberateness." Id. at 1296. Here, there is no "clear and unmistakable" disavowal of claim scope in the portion of the prosecution history on which Plaintiffs rely. Furthermore, the portion of the prosecution history on which Plaintiffs rely simply references unilateral statements made by the USPTO examiner. The Federal Circuit has held, however, that "unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant." E.g., Salazar, 414 F.3d at 1347.

In light of the above, I conclude that the term "proximate" is not limited to meaning "abutted against or in close proximity." Rather, the claim language, specification, and prosecution history indicate that the proper construction of the term is "near or by."

**O. "a wire that transmits information from the imaging device to the monitor"**

74 - OPINION AND ORDER

Although for different reasons, both parties concede that this court need not construe this claim term.  I adopt the parties' position that the term need not be construed, and conclude that the plain and ordinary meaning applies to this claim term.

### P. "a wire that transmits a video signal from the imaging device to the monitor"

Plaintiffs assert that this claim term has a plain and readily ascertainable meaning, and therefore does not need to be construed.  Dunwell declines to provide a definition and asserts that this phrase need not be construed because it fails for lack of enablement and indefiniteness under 35 U.S.C § 112.

The claim term is recited only in claim 22, which provides in its entirety:

> 22. A magnifying observation apparatus according to claim 16, wherein the image pick-up apparatus is connected to the monitor by a wire that transmits a video signal from the imaging device to the monitor.

'489 patent, claim 22 (emphasis added).

As discussed above, I find it inappropriate to address Dunwell's invalidity claims for lack of enablement and indefiniteness at this time.  See Divix Golf, Inc., 05CV1488 JAH (CAB), 2007 WL 5704046, at *28.  More important, nothing in the record indicates that the inventors intended the claim term to have a special or limited meaning.  Accordingly, I conclude that the term's plain and ordinary meaning applies.

### Q. "imaging device"

Plaintiffs define the term as "a device capable of sensing light and generating a corresponding electronic signal."  Dunwell defines the term to mean "a solid-state image sensing device such as a charge-coupled device (CCD)."

75 - OPINION AND ORDER

The term "imaging device" is used throughout the claims.  The claims recite that the image pick-up apparatus incorporates, among other things, a "control circuit unit" for the imaging device and an "optical system" for focusing the image of the object to be observed on the "imaging device."  See '489 patent, claims 1, 6, 7, 11, 16, 23, 28.

Claims 3 and 8, which depend on claims 1 and 7, respectively, recite that the "imaging device is incorporated in the image pick-up apparatus in such a manner that a light receiving surface of the imaging device is orthogonal to an optical axis of an image light which is incident from the thus-bent front end portion of the image pick-up apparatus."  See Id., claim 3, 8 (emphasis added).

A number of dependent claims further recite that the "objective lens of said optical system and said imaging device slide in interlock with each other."  See Id., claim 4, 5, 6, 9, 10, 14, 20, 26, 31 (emphasis added).

Claim 11, recites that the "imaging device" transmits "signals," stating in its entirety:

11. A magnifying observation apparatus that includes an image pick-up apparatus for reproducing an image of an object located proximate the image pick-up apparatus onto a monitor display, said image pick-up apparatus comprising a casing having a viewing hole, the casing enclosing at least an imaging device, a control circuit unit for processing a signal received from the imaging device and emitting a video signal, an optical system for focusing the image of an object located proximate the viewing hole on the imaging device, and a light-source for lighting the object to be observed.

Id., claim 11 (emphasis added).

Similarly, a number of dependent claims also recite that the "image pick-up apparatus is connected to the monitor by a wire that transmits information from the imaging device to the monitor."  Id., claims 15, 22, 27, 32 (emphasis added).

I find that the claim language does not support Plaintiffs' proposed definition, which

76 - OPINION AND ORDER

limits the claim term to "sensing light."  Rather, the body of claims 3 and 8 describe the "imaging

device" as "receiving" light.  Furthermore, independent claim 11 limits the "imaging device" to,

among other things, sending "signals."  It does not limit the "imaging device" to sending only

"electronic" signals.

> I turn next to Dunwell's proposed definition.  The specification states in relevant part:

> While the image pick-up apparatus is held by hand, the light condensing guide 105
> is brought into abutment with the object M or is drawn close thereto, then an image
> obtained by an <u>imaging device (a solid-state image sensing device)</u> 104 incorporated
> in the image pick-up apparatus 100 is reproduced on the display and observed.

Id., column 1, lines 44-50 (emphasis added).

The specification also refers the reader to Figure 13, which states in capitalized letters,

"PRIOR ART."  <u>See</u> Id., Figure 13.  Furthermore, the specification goes on to read that "[i]n <u>such</u>

<u>magnifying and observing system . . . a controller is needed in addition to the image pick-up</u>

<u>apparatus and the display, resulting in increase in size as a whole.  <u>This point causes</u>

<u>dissatisfaction in the case where a greater importance is attached to handiness</u>."  Id., column 1,

lines 58-68 (emphasis added).  I find that this portion of the specification only refers to the phrase

"a solid-state image sensing device" in regards to prior art, not the current invention.  In addition,

I find no clear intent limiting the claim scope to "a solid-state image sensing device."  <u>See</u> <u>Abbott</u>

<u>Labs. v. Sandoz, Inc.</u>, 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("When consulting the specification

to clarify the meaning of claim terms, courts must take care not to import limitations into the

claims from the specification.").

The first embodiment in the specification teaches that "[t]he imaging means 2 comprises

an <u>imaging device 10 using a CCD</u> and a control circuit unit 13 for controlling the imaging

77 - OPINION AND ORDER

device 10 and for amplifying an image signal." See '489 patent, column 5, lines 53-56.  The

second embodiment also refers to CCDs, and states in pertinent part:

> The imaging means 202, like the imaging means 2 in the first embodiment,
> comprises an imaging device 210 using a CCD and a control circuit unit 213 for
> controlling the imaging device 210 and for amplifying an image signal. But a
> difference from the imaging means 2 in the first embodiment is recognized in that the
> imaging device 210 is connected to the control circuit unit 213 through a flexible
> cable 214, that is, the imaging device 210 is rendered movable freely with respect to
> the control circuit unit 213.

Id., column 8, lines 21-30.

There is no indication, however, of a manifest intent by the patentees to impart a special

meaning on the term "imaging device," especially where the broader language of the claims do

not even mention CCDs.  See Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir.

2001) (concluding that "unless compelled to do otherwise, a court will give a claim term the full

range of its ordinary meaning as understood by an artisan of ordinary skill").

Finally, I disagree with the parties' contention that the term be limited to "sensing."

Plaintiffs define the term to include "a device capable of sensing light," whereas Dunwell simply

defines it to include an "image sensing device."  The word "sensing" does not appear in any of

the claims.  Instead, it appears only in the "Background Art" section of the specification.  The

word "sensing" appears in the phrases "solid-state image sensing device" and "a light sensing

surface of the imaging device [to] be made directly perpendicular to the direction of image light

incident from the sideways-bent front end portion of the image pick-up apparatus."  '489 patent,

column 1, lines 44-50; Id., column 2, lines 47-54.

It is a basic tenet of claim construction that examples or embodiments described in the

specification do not limit claim language, absent clear intent.  See, e.g., Liebel–Flarsheim Co.,

78 - OPINION AND ORDER

358 F.3d at 906.  I find no such clear intent here.  Furthermore, the claims themselves recite that the receiving surface of the imaging device "receives" light.  See '489 patent, claims 3, 8 (emphasis added) (reciting the "light receiving surface of the imaging device is orthogonal to an optical axis of an image light which is incident from the thus-bent front end portion of the image pick-up apparatus.").

In light of the claims and specification, I define the term "image device" as "a device capable of receiving light and transmitting signals."

**R. "maintained at a predetermined fixed distance from the object"**

Both parties argue, and I agree, that this claim term need not be construed.

**S. "power supply circuit"**

Plaintiffs assert that this claim term has a readily ascertainable meaning to both a lay person and a person of ordinary skill in the art, and therefore does not require construction.  They further assert that to the extent the court requires clarification, the term means "an electronic circuit that can provide electrical power."  Dunwell defines the term as "a circuit board with lead wires that (1) provide power to a plurality of lamps in a lamp unit and (2) have receiving holes to which the terminal pins of the lamp unit detachably interlock, thereby allowing for the easy removal of the lamp."

The term "power supply circuit" does not appear in the original claims of the '489 patent. Rather, the term only appears in the first and second embodiment of the '489 patent specification and claim 37 of the '489 C1 patent.

The first embodiment of the '489 patent teaches in pertinent part:

79 - OPINION AND ORDER

On the board 29 is formed a partial <u>power-supply circuit</u> 31 for the lamps 23, for example by printing, with terminal receiving holes 32, 32 being formed in both end portions of the circuit 31. When the lamp unit 26 is mounted into the mounting hole 30 as mentioned previously, terminal pins 33p of connecting terminals 33 are fitted in the terminal receiving holes 32, 32 to make connection with a <u>power-supply circuit</u> 31 in FIG. 4.

'489 patent, column 7, lines 36-44 (emphasis added).

The second embodiment teaches:

As other components there are used optical means 203, optical lens 216, flare stops 217, polarizing unit 218, second polarizer 220, polarization plane rotating means 221, non-reflection image switch 223, first polarizer 224, light source means 204, lamp 225, oscillator 226, reflection image switch 227, lamp unit 228, diffusion preventing mirror 229, lighting/processing unit 230, partial <u>power-supply circuit</u> 231, terminal receiving hole 234, mounting hole 232, connecting terminal 235, terminal pin 235p, diffuser panel 237, and heat rays absorbing plate 238.

Id., column 8, lines 43-54 (emphasis added).

Claim 37 provides in its entirety:

37. A magnifying observation apparatus according to claim 1, wherein the light-source lamp is formed as a lamp unit comprising a plurality of lamps mounted on a common board, wherein the common board is formed with a <u>power supply circuit</u> for supplying the power to the plurality of lamps, and wherein each one of the plurality of lamps illuminates in response to electrical current.

'489 C1 patent, claim 37 (emphasis added).

Claim 37 provides no guidance on the meaning of the claim term.  Although the specification here generally describes the "power supply circuit," Dunwell's proposed definition is overly narrow, as it improperly limits the claims to specific language in the patent's embodiments.  See <u>i4i Ltd. P'ship v. Microsoft Corp.</u>, 598 F.3d 831, 843 (Fed. Cir. 2010) ("[A] claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a 'clear intention' to limit the claim's scope with 'words or expressions of manifest

80 - OPINION AND ORDER

exclusion or restriction.'").  Furthermore, in light of the claim language and specification, I find that a person of ordinary skill in the art would understand the meaning of a "power supply circuit" after reading the claims and the specification.  Claim 7 describes that the "power supply circuit" is "for supplying the power to the plurality of lamps" and the specification teaches that the "power-supply circuit" is "for the lamps."  '489 C1 patent, claim 37; '489 patent, column 7, lines 36-44.  Accordingly, I conclude that the plain and ordinary meaning applies.

### T. "outer edge of the viewing hole"

Plaintiffs define the term as a "plane defined by the viewing hole."  Dunwell asserts that this term is immaterial and need not be construed.

Plaintiffs contend that the term "outer edge of the viewing hole" is subject to two different interpretations.  First, they contend that the term could be interpreted as the perimeter of the viewing hole.  Second, they assert that the term could be interpreted as the plane of the viewing hole.  They argue that the second interpretation is supported by the specification and claims of the '489 C1 patent.  They contend that when considering the language of claims 33 and 49 of the '489 C1 patent, the term means the distance between the plane of the viewing hole and the object.

The term "outer edge viewing hole" does not appear in any of the claims or specification of the '489 patent.  Rather, the term only appears in claim 48 of the '489 C1 patent, which recites in its entirety:

> 48.   A magnifying observation apparatus according to claim 33, wherein the predetermined fixed distance is the distance between an outer edge of the viewing hole and the object to be observed.

'489 C1 patent, claim 48 (emphasis added).

81 - OPINION AND ORDER

Claim 48 depends on claim 33.  Claim 33 provides in its entirety:

> A magnifying observation apparatus according to claim 1, wherein the control circuit unit controls the imaging device, and
>> wherein the optical system focuses the image of the object to be observed on the imaging device and magnifies the image, while the image pick-up apparatus is maintained at a predetermined fixed distance for the object to be observed.

Id., claim 33.

Claim 49 refers to the word "plane," and recites in its entirety:

> 49.  A magnifying observation apparatus according to claim 1, wherein the viewing hole defines a <u>plane</u> and wherein the optical system is configured to focus on the <u>plane</u> so as to focus on the object when the object is abutted against the viewing hole.

Id., claim 49 (emphasis added).

Turning to the claims, I find that the term is capable of having different interpretations and therefore, I conclude that it must be construed.  A court must analyze the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire intrinsic record.  <u>See, e.g.</u>, <u>Phillips</u>, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the <u>entire patent</u>, including the specification.") (Emphasis added).

Here, claims 33 and 48 do not define the term "outer edge of the viewing hole."  Claim 49, however, describes that the "viewing hole defines a plane" and that "the optical system is configured to focus on the plane."  <u>See</u> '489 C1 patent, claim 49.  Accordingly, I construe the term to mean "plane of the viewing hole."

82 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, I construe the following terms as follows:

| Claim Term | Construction |
|---|---|
| 1. "viewing hole" | "a covered or uncovered opening" |
| 2. "uncovered viewing hole" | "uncovered opening" |
| 3. "optical system" | "a system including a lens capable of forming a focused image and not configured to change a mutual spacing of plural constituent lenses" |
| 4. "objective lens of said optical system is movable to adjust magnification" and "objective lens that is movable to adjust magnification" | "lens can be moved to produce images with different amounts of magnification and not configured to change a mutual spacing of plural constituent lenses" |
| 5. "light-source" | "an object that emits light" |
| 6. "light-source lamp" | "an object used in a broad concept which covers not only incandescent lamps and fluorescent lamps, but also light emitting diodes and the like" |
| 7. "light-source lamp means" | "an incandescent lamp, a fluorescent lamp, a light emitting diode, and equivalents" |
| 8. "encased by the casing" | "wholly contained within the casing" |
| 9. "light-source lamp encased by the casing" | "an object used in a broad concept which covers not only incandescent lamps and fluorescent lamps, but also light emitting diodes and the like wholly contained within the casing" |
| 10. "lamp unit" and "light-source lamp unit" | "one or more lamps arranged on a board" |
| 11. "lamp unit can be mounted to and removed from" and "lamp unit can be mounted to" | "the whole of the lamp unit can be mounted and removed" |
| 12. "wherein the common board is supplied with a power supply circuit for supplying power to a plurality of lamps" | This term need not be construed. |
| 13. "a front end portion of said image pick-up apparatus is bent sideways" | "a front end portion of the image pick-up apparatus is bent in an inclined state with respect to the body portion of the pick-up apparatus" |
| 14. "proximate" | "near or by" |
| 15. "a wire that transmits information from the imaging device to the monitor" | The plain and ordinary meaning applies. |
| 16. "a wire that transmits a video signal from the imaging device to the monitor" | The plain and ordinary meaning applies. |
| 17. "imaging device" | "a device capable of receiving light and transmitting signals" |

83 - OPINION AND ORDER

| 18. "maintained at a predetermined fixed" | This term need not be construed. |
| 19. "power supply circuit" | The plain and ordinary meaning applies. |
| 20. "outer edge of the viewing hole" | "plane of the viewing hole" |

IT IS SO ORDERED.

Dated this 31st day of May 2011.


  /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

84 - OPINION AND ORDER