IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

COMPUTER STORES NORTHWEST, INC. and
SCALAR CORP.                                              No. CV-10-284-HZ

               Plaintiffs,                               OPINION AND ORDER

       v.

DUNWELL TECH, INC. and
ANMO ELECTRONICS CORP.

               Defendants.

Shawn J. Kolitch
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

David C. Bourgeau, III
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

1 - OPINION AND ORDER

Pierre C. Van Rysselberghe
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

James R. Abney
KOLISCH HARTWELL, P.C.
520 S.W. Yamhill Street, Suite 200
Portland, OR 97204

      Attorneys for Plaintiffs

Brett A. Lovejoy, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Douglas E. Roberts, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Noel Rodriguez, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Pamela K. Fulmer, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Patrick T. Michael, *Pro Hac Vice*
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104-1500

Scott E. Davis
KLARQUIST SPARKMAN LLP
121 SW Salmon St., Suite 1600
Portland, OR 97204

      Attorneys for Defendants Dunwell Tech, Inc. and Anmo Electronics Corp.

2 - OPINION AND ORDER

**INTRODUCTION**

Presently before me is AnMo Electronics Corporation's ("AnMo") Rule 12 Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process ("Motion to Dismiss") (doc. #42).  Anmo asserts that it lacks sufficient contact with Oregon and therefore, the complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  It also asserts that Plaintiffs' claims against it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

**BACKGROUND**

Plaintiffs Computer Stores Northwest, Inc. ("Computer Stores") and Scalar Corp. ("Scalar") (collectively, "Plaintiffs") allege that Defendants Dunwell Tech, Inc. ("Dunwell") and Anmo Electronics Corp. ("Anmo") (collectively, "Defendants") are infringing on Scalar's United States Patent No. 5,442,489 (the "'489 patent") and Patent No. 5,442,489 C1 (the "'489 C1 patent").  The patents disclose a handheld, portable, microscope device.

Computer Stores is an Oregon corporation with its principal place of business and mailing address in Lake Oswego, Oregon.  Scalar is a Japanese corporation, with its principal place of business and mailing address in Tokyo, Japan.  Scalar owns the '489 patent and granted an exclusive U.S. license to Computer Stores giving Computer Stores the right to manufacture, sell, and offer for sale certain products under the '489 patent.  See Second Am. Compl., ¶ 12.

AnMo is a company with its headquarters and mailing address in Taiwan.  See Second Am. Compl., ¶ 5.  AnMo owns by assignment and manufactures the alleged infringing portable digital microscopes made under United States Patent No. 7,102,817 B1 (the "'817 patent"), and

sells its digital microscopes under the trademark "Dino-Lite."  See Second Am. Compl., ¶ 18; see also Decl. of Paul Wu ("Wu Decl."), ¶¶ 4, 15, 16.

AnMo maintains its offices, manufacturing facilities, and warehouses in Taiwan.  See Wu Decl., ¶ 4.  AnMo has no employees, place of business, officers, registered agent authorized to accept service on its behalf, or assets in Oregon.  See Decl. of Richard Tsay ("Tsay Decl."), ¶¶ 4-8; see also Wu Decl., ¶¶ 20-21.  AnMo has never had a bank account in Oregon or owned property in Oregon.  See Wu Decl., ¶¶ 10-11.  AnMo does not advertise in Oregon, and does not advertise in any print or electronic publications circulated in Oregon.  Id., ¶ 9.  No employee of AnMo has ever been to Oregon for the purpose of conducting business on AnMo's behalf.  Id., ¶¶ 7-8.  Finally, AnMo has never directly sold a Dino-Lite product to any customer in Oregon.  Id., ¶ 15.  Instead, AnMo ships Dino-Lite products to Dunwell and designates each shipment as freight-on-board Taipei.  Id., ¶ 22.

Dunwell is a corporation with its principal place of business and mailing address in Torrance, California.  See Tsay Decl., ¶ 1; see also Dunwell's Answer to Second Am. Compl., ¶ 4.  It does business as BigC and SunriseDino.  See Dunwell's Answer to Second Am. Compl., ¶ 4.  Dunwell is AnMo's only United States distributor of Dino-Lite products.  See Wu Decl., ¶ 16.  Dunwell, however, does not hold an exclusive license with AnMo, and AnMo exercises no control over Dunwell's sales or marketing.  See Id., ¶¶ 17-18.

Dunwell regularly attends trade shows throughout the United States, including Oregon.  See Tsay Decl., ¶ 10.  In 2009, Dunwell attended two trade shows in Oregon: the 2009 Design 2 Part Show and the 2009 American Phytopathological Society Annual Meeting.  See Decl. of Shawn J. Kolitch ("Kolitch Decl."), Ex. Q, p. DT003195-3196.  In 2010, Dunwell again attended

4 - OPINION AND ORDER

two trade shows in Oregon: the 2010 American Association of Physics Teachers Meeting and the

2010 Microscopy & Microanalysis Meeting.  See Id., Ex. R, p. DT008312; Id., Ex. S, p.

DT003139.

AnMo maintains the following two websites: http://www.anmo.com.tw and

http://www.dino-lite.com, which are both hosted in Taiwan.[1]  See Wu Decl., ¶ 12.  AnMo's

website, www.dino-lite.com, provides viewers with contact information to two of its "corporate

headquarters," including their mailing addresses, telephone and fax numbers, and hyperlinked

email addresses (both of which are Sales@anmo.com.tw).  See Kolitch Decl., Ex. G, p. 2.

Through the same website, viewers may contact AnMo with "feedback, comments, and

questions."  See Id., p. 1.  The website allows viewers to download free Dino-Lite user manuals,

installation guides, and software that enables users to use Dino-Lite products with their

computers.  See Wu Decl., ¶ 14.  AnMo's website also identifies BigC as one of its twelve

"worldwide distributors."  See Kolitch Decl., Ex. G, p. 1-2.  The website further provides viewers

with BigC's mailing address, telephone and fax numbers, and a hyperlink to BigC's website.  See

Id., p. 2.  None of AnMo's websites, however, allow users to purchase Dino-Lite products.  See

Wu Decl., ¶ 13.

BigC's website lists seventeen retailers under the heading "U.S. Stores," none of which

are Oregon retailers.  See Kolitch Decl., Ex. K, p. 1-2.  BigC's website also shows each retailer's

logo, and if available, a hyperlink to each retailer's website and email address, mailing address,

and telephone number. See Id.

---

[1] The two websites display the same information.  See AnMo's Mem. In Supp. of Rule 12
Mot. to Dismiss, p. 5 n.5.  When viewers visit http://www.anmo.com.tw, they are directed to
http://www.dino-lite.com.   See Wu Decl., ¶ 12.

From August 2010 through February 2011, AnMo had direct contact with various individuals across the United States, including three from Oregon. See Id., Ex. C, p. AE000162, AE000219, AE001958. Each of the three Oregon contacts initiated communication with AnMo by sending an email to AnMo through AnMo's website. See Id.

A spreadsheet dated August 9, 2010, and entitled, "Dunwell Tech. Inc. Customer & Job List," lists twelve customers who have Oregon billing addresses. See Id., Ex. O, p. 1-22. The twelve customers include both companies and individuals and represent approximately 1.4% of Dunwell's 870 total customers in the United States.[2] See Id.; see also Pls.' Resp. to AnMo's Rule 12 Mot. to Dismiss, p. 15.

## PROCEDURAL HISTORY

The relevant procedural history is as follows: On November 22, 2010, Plaintiffs filed a Second Amended Complaint which included AnMo as a defendant in this action. On November 30, Plaintiffs filed an Affidavit of Service of Summons on AnMo. According to that affidavit, an attorney based in Taipei took the summons and Plaintiffs' Second Amended Complaint to AnMo's place of business and left it with a receptionist. See Summons, p. 3.

AnMo filed its Motion to Dismiss on December 21, 2010, alleging lack of personal jurisdiction over AnMo and insufficient service of process. After AnMo filed its Motion to Dismiss, Plaintiffs served jurisdictional discovery requests on both AnMo and Dunwell. AnMo did not respond to these requests, but was ordered to do so by the Honorable Garr M. King on January 6, 2011. Judge King also instructed Plaintiffs to respond to AnMo's Motion to Dismiss one week after receiving responses from AnMo's jurisdictional discovery requests.

---

[2] The record fails to show the total dollar figures for sales in any state, including Oregon.

6 - OPINION AND ORDER

On March 21, 2011, Plaintiffs filed their response to AnMo's Motion to Dismiss.  (Doc. #75).  On April 4, 2011, AnMo filed its reply. (Doc. #77).  Oral argument for the parties' claim construction was held on April 7, 2011.  At oral argument, the parties agreed that I did not need to address AnMo's Motion to Dismiss until after I had finished claim construction.  Oral argument for AnMo's Motion to Dismiss was held on May 31, 2011.

## STANDARDS

### I. Motion to Dismiss for Insufficient Service of Process

Fed. R. Civ. P. 12(b)(5) allows a defendant to move to dismiss an action where the service of process of a summons and complaint is insufficient.  See Fed. R. Civ. P. 12(b)(5).  It is plaintiff's burden to establish the validity of service of process.  See, e.g., Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

### II. Motion to Dismiss for Lack of Personal Jurisdiction

Personal jurisdiction in patent cases is decided under Federal Circuit law rather than the law of the regional circuit in which the case arose.  E.g., Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  The plaintiff bears the burden of establishing that the defendant had the requisite contacts with the forum.  See Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  Without discovery and a record on jurisdiction, a court must resolve all factual disputes in the plaintiff's favor.  Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002).  "[W]here the plaintiff's factual allegations 'are not directly controverted, [they] are taken as true for purposes of determining jurisdiction. . . .'" Akro Corp., 45 F.3d at 1543 (citation omitted).  To survive a motion to dismiss in the absence of

7 - OPINION AND ORDER

jurisdictional discovery, plaintiffs need only make a prima facie showing of jurisdiction.  Trintec

Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005).

Personal jurisdiction over a nonresident defendant is proper only if the forum state's long-

arm statute confers personal jurisdiction and the exercise of jurisdiction comports with federal

due-process standards.  Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358

(Fed. Cir. 1998).  Because "Oregon's long-arm statute confers jurisdiction to the extent permitted

by due process," these two requirements collapse into a single analysis of whether personal

jurisdiction is fair and reasonable consistent with the constitutional guarantee of due process.

E.g., Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990); see also Or. R.

Civ. P. 4(L) (providing that "[a] court of this state having jurisdiction of the subject matter has

jurisdiction over a party served in an action pursuant to Rule 7 under any of the following

circumstances: . . . "in any action where prosecution of the action against a defendant in this state

is not inconsistent with the Constitution of this state or the Constitution of the United States.").

The Due Process Clause of the United States Constitution protects persons from being

subject to the binding judgments of a forum with which they have "established no meaningful

'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)

(citation omitted).  Due process requires that a defendant have "minimum contacts with the

forum state such that the exercise of personal jurisdiction does not offend traditional notions of

fair play and substantial justice."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834,

839 (9th Cir. 1986) (citation omitted).

In accord with the Due Process Clause, the "minimum contacts" standard may be satisfied

in two ways.  See, e.g., Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  First, a court may

8 - OPINION AND ORDER

exercise general jurisdiction when the defendant's contacts with the forum state are "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." E.g., Reebok Int'l. Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th Cir. 1995). A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). The standard for general jurisdiction is high, requiring that the contacts in the forum "approximate physical presence." Tuazon v. R.J. Reynolds Tobacco Co., 42 F.3d 1163, 1169 (9th Cir. 2006). Plaintiffs here make no assertion that AnMo is subject to this court's general jurisdiction.

Instead, Plaintiffs assert that specific jurisdiction exists. "'Specific' jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1563 n.10 (Fed. Cir. 1994) (citation omitted). "It contrasts with 'general' jurisdiction, in which the defendant's contacts have no necessary relationship to the cause of action." Id. at 1563 n.10 (citation omitted). The court applies a three-pronged test to determine whether it has specific personal jurisdiction over a defendant. See, e.g., Inamed Corp., 249 F.3d at 1360. First, the court inquires whether the defendant purposefully directed activities at residents of the forum state. Id. at 1360 (citation omitted). Second, the claim must arise out of or relate to the defendant's forum-related activities. Id. Finally, the court's exercise of jurisdiction must be reasonable and fair. Id. The third prong, however, is applied sparingly. See, e.g., Nuance Commc'n, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (9th Cir. 2010).

9 - OPINION AND ORDER

To establish the defendant "purposefully directed" its conduct toward the forum, the plaintiff usually produces "evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004). The "purposeful availment" inquiry usually involves evidence of the defendant's actions in the forum to determine whether the defendant should reasonably anticipate being haled into the forum state court based on its contacts. See Id., 374 F.3d at 802; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The purposeful availment test is met where "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).

The second prong in the analysis requires that the claim arise out of or result from the defendant's forum-related activities. See, e.g., Inamed Corp., 249 F.3d at 1360. A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).

Plaintiff bears the burden of satisfying the first two prongs of the specific jurisdiction test. See, e.g., Schwarzenegger, 374 F.3d at 802. The burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not satisfy the third prong of the test.[3] Id.

---

[3] Although the burden is on Plaintiffs to satisfy the first two prongs of the specific jurisdiction test, they only address the first prong, purposeful availment. See Pls.' Resp. to AnMo's Rule 12 Mot. to Dismiss, p. 4.

**DISCUSSION**

**I. Insufficient Service of Process**

Anmo asserts that Plaintiffs' service of process through an individual violated Taiwan's Code of Civil Procedure ("TCCP") 123, which it argues precludes someone other than the clerk of the court from effecting service of process on a corporation in Taiwan. I decline to address this issue, however, because as discussed below, I find that this court lacks personal jurisdiction over AnMo. Accordingly, this issue is moot.

**II. Lack of Personal Jurisdiction**

A company purposefully directs its conduct towards the forum state when it takes actions "indicat[ing] an intent or purpose to serve the market in the forum state." Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.); Commisariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1321–22 (Fed. Cir. 2005) (stating that "evidence ha[d] not yet been presented that would satisfy Justice O'Connor's standard for '[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State'") (citation omitted). Facts that could demonstrate this intent include, inter alia, "advertising in the forum state" and "marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." Asahi, 480 U.S. at 112 (opinion of O'Connor, J.). "[C]ontacts only add to the quantum for personal jurisdiction when purposefully directed at the forum or its residents. 'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus." Red Wing, 148 F.3d at 1359 (citation omitted).

11 - OPINION AND ORDER

### A. Whether AnMo Directed Contacts to Customers in Oregon

AnMo argues that this court lacks personal jurisdiction over it because it did not purposefully direct its conduct at Oregon. It contends that it has never reached out to residents of Oregon, and instead has only responded to inquiries left on its website. AnMo maintains that it has never made any sales to customers in Oregon, and simply refers sales inquiries received through its website to Dunwell.

Plaintiffs assert that this court has specific personal jurisdiction over AnMo because it has had direct contact with several customers in Oregon. They contend that from August 2010 through February 2011 AnMo has had several hundred contacts with actual and prospective Dino-Lite customers in the United States. See Kolitch Decl., ¶ 4 (emphasis added).

A review of the record shows that AnMo has had only three email contacts with Dino-Lite customers in Oregon. See Kolitch Decl., Ex. C., p. AE000162, AE000219, DT004529. These three emails are an insufficient basis on which to infer AnMo purposely availed itself of the privilege of conducting activities in this forum. Although the record shows that AnMo has had some contacts with Oregon customers, in each of those incidents the customers solicited business from AnMo or initiated contact with AnMo.[4] See Id., p. AE000162, AE000219, DT004529.

_____

[4] Plaintiffs repeatedly rely on emails showing that AnMo has had contacts with customers throughout the United States. Those contacts, however, are irrelevant for the purpose of determining whether this court has specific jurisdiction over AnMo. See Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1020 (Fed. Cir. 2009) (stating that under the first prong of the specific jurisdiction test, plaintiffs must show that "the defendant purposefully directed its activities at residents of the forum . . .") (Emphasis added) (Citation omitted).

Furthermore, the record shows that after receiving emails from customers interested in purchasing Dino-Lite products, AnMo simply directed each customer to Dunwell. See Id. For example, in August 2010, a prospective customer from Oregon contacted AnMo via its website expressing her interest in purchasing one of AnMo's product. See Id., p. AE000162-163. AnMo responded, "Thank you for your interest in Dino-Lite digital microscopes. We are pleased to have our US master distributor to [sic] serve you directly. BigC in LA will help you very soon in your application." See Id., p. AE001958-1959. Similarly, in February 2011 another prospective customer from Oregon requested Dino-Lite product information from AnMo through its website. See Id., p. AE000162-163. AnMo provided the prospective customer with a similar response: "Thank you for your interest [sic] Dino-Lite digital microscope [sic]. We are pleased to have our US distributor to [sic] serve you directly. BigC in LA will contact you shortly." See Id.

The record also shows that upon receiving technical support questions from customers, AnMo simply directs the customers to Dunwell. See Id., p. AE000162-63, AE000219-220, DT004529-30. For example, in January 2011, an Oregon customer who had purchased a Dino-Lite product emailed a question through AnMo's website and requested an instruction manual. See Id., p. AE000219-220. AnMo responded, "Good day. Thank you for using Dino-Lite digital microscope [sic]. We are pleased to have our US master distributor to [sic] serve you directly. BigC who located [sic] in LA will contact you very soon." Id. Similarly, the record shows that upon receiving customer technical support inquiries forwarded from Dunwell to AnMo, AnMo simply responds to Dunwell, not the customer. See Id., p. DT004529-30. In sum, nothing in the record indicates that AnMo initiates contact with Oregon customers. Furthermore, nothing in the

13 - OPINION AND ORDER

record indicates that AnMo does anything more than direct Oregon customers to Dunwell after being contacted by such customers.

Plaintiffs assert that the website maintained by AnMo supports their position that "AnMo has purposefully adopted the role of providing customer service and dealer referrals to actual and prospective customers around the world." Pls.' Resp. to AnMo's Rule 12 Mot. to Dismiss, p. 9. The Federal Circuit has not yet defined the standard for minimum contacts via a website. See, e.g., Litmer v. PDQUSA.com, 326 F. Supp. 2d 952, 956 (N.D. Ind. 2004). "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." Jeske v. Fenmore, No. SACV 08-01015 DOC (MLGx), 2008 WL 5101808, at *4 (C.D. Cal. 2008) (citing Boschetto v. Hansing, 539 F.3d 1011, 1018 (9th Cir. 2008)).

Under the "sliding scale" approach, at one end of the scale are "passive" websites which merely display information, such as an advertisement. See, e.g., Am. Auto. Ass'n, Inc. v. Darba Enters. Inc., No. C 09-00510 SI, 2009 WL 1066506, at *4 (N.D. Cal. 2009). At the other end of the scale are "interactive" websites which function for commercial purposes and where users exchange information. See, e.g., Id. Personal jurisdiction is appropriate where an entity is conducting business over the Internet and has offered for sale and sold its products to forum residents. See Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (holding that the exercise of personal jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); see also Allstar Mktg. Grp., LLC, v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1122 (C.D. Cal. 2009) (holding that the exercise of personal

14 - OPINION AND ORDER

jurisdiction was appropriate because "by operating a highly commercial website through which regular sales of allegedly infringing products are made to customers in [the forum state], [the defendant has] purposefully availed [itself] of the benefits of doing business in this district"). Where a website is somewhere between the two extremes, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." E.g., Stomp, Inc., 61 F. Supp. 2d at 1078 (citations and quotations omitted).

Although the website here contains some interactive features, it is not sufficiently interactive to support a finding of specific jurisdiction over AnMo.  See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005) (distinguishing between "essentially passive" websites and "highly interactive" websites).  The website requires prospective customers to initiate contact with AnMo by telephone, mail, or email.  It also allows viewers to provide "feedback, comments, and suggestions" to AnMo under the following categories: "Usage or Connection Issues," "Service-Related Issues," "Product Information Requests," "Purchase Information Requests," "Website Feedback," "Product Suggestion," and "Others."  See Kolitch Decl., Ex. G, p.1.  Additionally, it allows viewers to download software and user manuals.  See Wu Decl., ¶ 14.  However, customers cannot directly purchase any product through the website.  There is no transaction, purchase, or sale that can be consummated by means of the website.  Furthermore, it does not appear that the website provides mechanism for processing payments.  Finally, the website is not targeted specifically towards customers in Oregon.

15 - OPINION AND ORDER

In sum, I find that the contacts AnMo has had with Oregon customers and the passive

nature of AnMo's website do not support personal jurisdiction over AnMo.

**B. Whether AnMo Uses An Established Distribution Channel**

Plaintiffs assert that they need not show AnMo has had direct commercial contacts with

customers in Oregon for this court to assert personal jurisdiction over AnMo.  They argue that

under Nuance, 626 F.3d at 1233, they need only show that AnMo "purposefully shipped products

through an established distribution channel with the expectation that those products would be

sold in the forum."  See Pls.' Resp. to AnMo's Rule 12 Mot. to Dismiss, p. 10.

Nuance, however, is distinguishable on its facts.  In that case, the Federal Circuit found

that plaintiff had "brought suit in the same forum in which Abbyy Production's distributor,

Abbyy USA, [was] located. . . . [and] [m]oreover, . . . Abbyy Production ha[d] agreed to furnish

Abbyy USA with new versions and updates of the Software, technical support, and oral and

written consultations."  Id. at 1234.  In this case, Dunwell is located in a different

forum–California, and unlike Nuance, there is no evidence that AnMo has agreed to furnish

Dunwell with new versions and updates of its product, technical support, and consultations.

Lastly, and more important, the foreign defendant and in-state distributor in Nuance were

"commonly owned sister companies operating under a consolidated Global Management Team"

and were "wholly-owned" subsidiaries of the same foreign corporation.  See Id. at 1228.  By

contrast, no common ownership exists in the present case.

The Federal Circuit in Nuance relied in part on its decision in Beverly Hills Fan Co., 21

F.3d at 1564-67, where it held that the United States District Court for the Eastern District of

Virginia had personal jurisdiction over defendants Ultec Enterprises Co., Ltd. ("Ultec") and

16 - OPINION AND ORDER

Royal Sovereign Corp. ("Royal").  See Id. at 1559-60.  In that case, Ultec manufactured the allegedly infringing product in Taiwan and was incorporated in the People's Republic of China. Id. at 1560, 1563.  Royal was incorporated in New Jersey, "import[ed] into and distribute[d] the accused fan in the United States," and agreed to honor the warranty on Ultec's fan.  Id. at 1560. Defendants in Beverly Hills Fan Co., 21 F.3d at 1561 also distributed their products through Builder's Square, a retailer which had six retail outlets in Virginia.

The Federal Circuit found that "the commercial relationship with Builder's Square was ongoing, and obviously intentional. . . . [and] that at least fifty-two Ultec [ceiling] fans were present in Virginia bearing Royal's warranty, reflecting an ongoing relationship with the Virginia retailer and customers."  Id. at 1564.  The Federal Circuit further found that "it c[ould] be presumed that the distribution channel formed by defendants and Builder's Square was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia [the forum state]."  Id. at 1559, 1564 (emphasis added).

The facts here are distinguishable from Beverly Hills Fan Co.  In contrast to that case, nothing in the record indicates that AnMo has intentionally established an ongoing commercial relationship with any Oregon retailer.  Furthermore, unlike Beverly Hills Fan Co., there is no evidence that Dunwell honors any of the warranties on AnMo's products.

In light of the above, I cannot conclude that AnMo intentionally established a distribution channel that it knew, or could have foreseen, terminated in Oregon.  See Nuance, 626 F.3d at 1235.  In fact, I cannot conclude that based on the record before me an established distribution channel between AnMo and Oregon exists at all.  In sum, I find AnMo's contacts with Oregon

are too attenuated for this court to assert jurisdiction over AnMo.  <u>See Red Wing</u>, 148 F.3d at

1359 (citation omitted).

## CONCLUSION

For the reasons set forth above, I find that this court lacks personal jurisdiction over

AnMo.  AnMo's Motion to Dismiss (doc. #42) is granted.

IT IS SO ORDERED.

Dated this 9th day of June 2011.


 /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

18 - OPINION AND ORDER